## CONLEY v. VALLEY MOTOR TRANSIT CO.
### No. 9583.

Circuit Court of Appeals, Sixth Circuit.
Nov. 30, 1943.

Raymond S. Buzzard, of East Liverpool, Ohio, for appellant.

Paul E. Cholette, of Grand Rapids, Mich. (J. G. Belknap, of Columbus, Ohio, Wm. B. Moore, of Lisbon, Ohio, Paul E. Cholette, of Grand Rapids, Mich., and Claude D. Cass, of Washington, D. C., on the brief), for appellee.

Before SIMONS, MARTIN, and McALLISTER, Circuit Judges.

MARTIN, Circuit Judge.

The Valley Motor Transit Company, a motorbus carrier, formerly operated an electric interurban line along the Ohio River from Steubenville, Ohio, to Beaver, Pa., traversing a distance of 42 miles. Without change in route, with the same stops and type of traffic, its electrified system was eventually converted to a bus line. The same zones were continued in use and the same fares were charged.

The route of the Transit Company required the operation of its buses in interstate commerce in the States of Ohio, West Virginia and Pennsylvania. Clifford Conley was employed as a dispatcher in the service of the company and was concededly engaged in interstate commerce.

In conformity with U.S.C.A., Title 28, § 400, Jud.Code § 274d, as amended, the Valley Motor Transit Company filed on September 1, 1942, a declaratory judgment action against Conley seeking adjudication that the Transit Company is a local motorbus carrier within the meaning of Section 13(a) (9) of the Fair Labor Standards Act, 29 U.S.C.A., § 213(a) (9), and that Conley and ten or twelve other employees, whose rights are identical with his, are not entitled to the benefits of the wage and hour provisions of the Act.

After trial upon the merits, at which testimony of witnesses and many exhibits were received in evidence, the District Court entered a declaratory judgment that the Valley Motor Transit Company is a local motorbus carrier and therefore comes within the exclusion of Section 13(a) (9) of the Fair Labor Standards Act: "(a)

The provisions of sections 206 and 207 of this title shall not apply with respect to * * * (9) any employee of a street, suburban, or interurban electric railway, or local trolley or motor bus carrier, not included in other exemptions contained in this section; * * *."

The District Court determined further that, by virtue of the exclusion found, Clifford Conley is not entitled to recover of the Transit Company overtime payment or liquidated damages; and his cross-complaint for such awards was dismissed. Conley has appealed from this judgment.

The sole issue here is whether, from the evidence revealed by the record, the District Court correctly ruled that the Valley Motor Transit Company is a local motorbus carrier within the meaning of the Fair Labor Standards Act and, accordingly, is exempt from the wage and hour provisions of that Act.

■ It is true, as contended by Conley, that the Fair Labor Standards Act, being a remedial statute, should be liberally construed to effectuate its humanitarian purposes. Fleming v. Hawkeye Pearl Button Co., 8 Cir., 113 F.2d 52, 56; Bowie v. Gonzalez, 1 Cir., 117 F.2d 11, 16. It is also true that exemption from the general scope of the Act should be permitted only those who, under a strict interpretation of the Act, classify clearly within the exemption. Miller Hatcheries v. Boyer, 8 Cir., 131 F.2d 283, 286; Lorenzetti v. American Trust Co., D.C., 45 F.Supp. 128, 139; Abram v. San Joaquin Cotton Oil Co., D.C., 46 F.Supp. 969. The words of a statute are generally to be construed in their ordinary meaning (Caminetti v. United States, 242 U.S. 470, 471, 485. 37 S.Ct. 192, 61 L.Ed. 442, L.R.A. 1917F, 502, Ann.Cas.1917B, 1168); but the duty of the courts is to interpret the language used so as to effectuate the intention of Congress. Foster v. United States, 303 U.S. 118, 120, 58 S.Ct. 424, 82 L.Ed. 700.

In ordinary and common usage, the word "locality" is synonymous in meaning with the words "place, vicinity, neighborhood and community." Lukens Steel Company v. Perkins, 70 App.D.C. 354, 107 F.2d 627, 631. But, as the Supreme Court has said, the words "locality" and "neighborhood" are "elastic and, dependent upon circumstances, may be equally satisfied by areas measured by rods or by miles." Connally v. General Construction Co., 269 U.S. 385, 395, 46 S.Ct. 126, 129, 70 L.Ed. 322.

With due observance of the rules of statutory construction, ultimate decision of the instant controversy must rest upon the distinguishing characteristics of local motorbus carriers and bus carriers engaged in long-distance transportation. From the testimony of bus transportation experts, it appears that these distinguishing characteristics are five in number and concern (1) traffic, (2) service, (3) equipment, (4) fare structures, and (5) wages and working conditions.

(1) *Traffic.* A local motorbus carrier transports, for an average distance of five miles, persons who travel its lines daily and constitute a group of workers, shoppers and school children. The long-distance bus carrier transports the same passenger only occasionally, and conveys him an average distance in excess of fifty miles. The Valley Motor Transit Company carried an average of more than 12,000 passengers daily, of whom only three passengers each day traveled the entire forty-two miles of its line. Long-distance carriers transporting passengers over the same route carried them an average distance of between 71 and 93 miles. A comparison between the daily transportation peaks of local and long-distance bus carriers, recognized by the experts as a further differentiation, lends support to the contention that the Valley Motor Transit Company classifies as a local motorbus carrier. In local transportation, there are morning and afternoon peaks, with light Sunday and Holiday travel; in long-distance carriage, there are no morning and afternoon peaks, but the heaviest traffic is on Saturdays, Sundays and Holidays. A comparison, also, of "seasonal peaks" characterizes the Transit Company as a local and not a long-distance carrier. Local passengers do not usually carry baggage, while long-distance passengers generally do. By comparison from a survey in evidence, only one percent of the Transit Company's passengers, as against more than 28% of the passengers of two long-distance carriers using one of the Transit Company's terminals, carried baggage. The Transit Company does not check baggage; long-distance carriers always do. Over the longest line operated by the Transit Company between the termini of Steubenville, Ohio, and Beaver, Pennsylvania, two long-distance carriers, rendering a different type of service, operate buses. The Transit Company serves workers in the several local communities who travel by bus to and

694

from various plants along the route, their wives who use the buses for shopping expeditions, and their children for school transportation. Entire families use the Transit Company's buses in search of evening entertainment.

An official publication of the Interstate Commerce Commission which was introduced in evidence classifies as local or suburban carriers those motor carriers reporting an annual average revenue of less than twenty cents per passenger carried. In 1942, the revenue of the Transit Company from each passenger on all its lines was only 8.328 cents and on its main line between Beaver and Steubenville, 11.17 cents.

(2) *Character of Service.* A long-distance bus carrier ordinarily stops at cities or towns, while the Transit Company has 239 regular stops on its forty-two-mile line between Steubenville and Beaver. The average speed of long-distance motorbus carriers, before the thirty-five-mile per hour speed limit was made effective as a war emergency measure, was between thirty and forty miles per hour, while the scheduled speed of the Transit Company's buses on its main line was only 18½ miles an hour. The "headway," that is the interval between the arrival of buses at a given point on a route, is determined for long-distance buses in hours or trips per day and, for local motorbus carriers, in minutes between successive buses on the schedule. At the East Liverpool terminal of the Transit Company, some 234 or 235 buses per day pass a given point and at Beaver, one of its termini, 40 or 41 buses per day.

(3) *Equipment.* Long-distance carriers use heavier buses than local carriers do, their buses are geared for a speed of sixty or more miles per hour, as against 45 miles an hour gearing for local buses. Long-distance carriers furnish reclining seats and provide narrow aisles. In local buses, the aisles are wider so that passengers may stand, there are double seats and usually longitudinal seats at the front or rear of the bus. Long-distance buses carry spare tires and baggage compartments, while local buses do not. By all these tokens, the character of equipment of the Transit Company buses, as shown by the testimony and exhibits, was that of a local carrier.

(4) *Fare Structures.* Fares charged by long-distance bus carriers are established on a mileage basis from terminal to terminal; those of local carriers by ordinance or franchise based upon a fixed fare for a ride within specific limits. The fares charged by the Transit Company were five cents per zone. Long-distance carriers sell tickets at their offices and accept cash fares only occasionally when a passenger boards a bus at some place other than a regular station stop. Local carriers generally equip their buses with cash-fare boxes, or cash registers, and the bus driver collects the fares. Long-distance carriers issue no transfers, but grant stop-over privileges; local bus carriers usually issue transfers on their connecting lines, but permit no stop-overs. All these criteria support the classification of the Transit Company as a local motorbus carrier.

(5) *Wages and Working Conditions.* Long-distance bus drivers are paid wages on a mileage basis, while the wages of local bus drivers are placed on an hourly or per diem basis. The long-distance drivers are frequently required to be away from home at night, while local drivers are not. With respect to working conditions and pay, the Transit Company followed the practice of local motorbus carriers.

The Valley Motor Transit Company is a member of the American Transit Association, composed of local public transportation operators and manufacturers of their equipment, and is not a member of the National Association of Motor Bus Operators, in which the long-distance bus companies hold membership.

It seems significant, moreover, that the Office of Defense Transportation issued to the Transit Company a Certificate of War Necessity as a local bus carrier and, under its General Order No. 11, paragraph (b), the Company would classify as a local bus carrier; as it likewise would under the bulletin of the National Resources Planning Board entitled "Transportation and National Policy," issued in May 1942, and under the definition of the Interstate Commerce Commission, heretofore mentioned, to which reference was made by a Passenger Motor Carrier Industry Committee appointed by the Department of Labor.

From the foregoing analysis of the operations of the Valley Motor Transit Company and the comparison of its operations with those of long-distance motorbus carriers, it is obvious that the Transit Company is a local motorbus carrier within the

meaning of the Fair Labor Standards Act and falls within the exemption from applicability of the wage and hour provisions provided in Section 13(a) (9) of the Act.

Accordingly, the judgment of the District Court is affirmed.