UNITED STATES of America, Plaintiff-Appellee,

v.

William GRONER, d/b/a Lucky Distributors, Defendant-Appellant.

No. 71–1091.

United States Court of Appeals, Fifth Circuit.

May 22, 1973.

Thornberry, Circuit Judge, filed a dissenting opinion in which John R. Brown, Chief Judge, Wisdom, Goldberg, Godbold, Simpson and Morgan, Circuit Judges, joined. Clark, Circuit Judge, filed a concurring opinion. Ainsworth, Circuit Judge, with whom Gewin, Bell, Coleman, Dyer, Ingraham and Roney, Circuit Judges, joined, filed a concurring opinion.

**578**

Mel S. Friedman, Will Gray, Houston, Tex., for defendant-appellant.

Frank D. McCown, U. S. Atty., Wm. F. Sanderson, Jr., Asst. U. S. Atty., Dallas, Tex., Larry E. Butcher, Atty., Criminal Div., Administrative Reg. Sec., Dept. of Just., Washington, D. C., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, INGRAHAM and RONEY, Circuit Judges.

GEWIN, Circuit Judge: *

This court sitting en banc has given full and careful consideration to the views expressed in the panel's opinion in this case and a majority of the court has concluded to reverse the opinion of the panel.[1]

The judgment of conviction entered by the district court upon a jury verdict of guilty is affirmed.

On this appeal a brief summary of Groner's contentions will suffice. He contends that: (1) the books involved in this case are not obscene when viewed under proper constitutional standards; (2) the evidence was insufficient to support his conviction; (3) the proceedings before the Grand Jury were defective in that a prior adversary hearing on the question of obscenity was not first conducted; (4) 18 U.S.C.A. § 1462 is unconstitutional on its face; (5) the books in question were unlawfully seized and should have been suppressed; (6) the trial court improperly instructed the jury; (7) the trial court improperly limited jury argument.

The posture of the case is adequately set forth in the panel's opinion. We deem it unnecessary to enlarge upon that opinion's recitation of the facts.

---

* Judges Bell, Coleman, Ainsworth, Dyer, Ingraham, and Roney join in this opinion. To the extent that Judge Clark concurs specially, it is the majority opinion of the court.

1. The panel opinion is dated January 11, 1972, 5 Cir., 475 F.2d 550. On March 28, 1972, a majority of this court ordered this case to be reheard en banc. The case was submitted to the court en banc on October 30, 1972.

There are solid grounds for setting aside the opinion of the panel. As will be developed hereinafter, the requirement that the prosecution support its proof by expert testimony on the elements of obscenity is misconceived, unnecessarily burdensome, and confounds traditional concepts of proof. It is little more than a fetishism formulated in the name of the First Amendment. We conclude that expert testimony on the elements of obscenity is not a constitutional necessity.

It is, of course, settled that an appellate court in First Amendment cases must make "an independent constitutional judgment on the facts of the case as to whether the material involved is constitutionally protected." Jacobellis v. Ohio, 1964, 378 U.S. 184, 190, 84 S.Ct. 1676, 1679, 12 L.Ed.2d 793, 799. This doctrine began in Pennekamp v. Florida, 1946, 328 U.S. 331, 335, 66 S.Ct. 1029, 90 L.Ed. 1295, 1297. This means that an appellate court must take a hard look at the quantum of proof in order to insure that vital First Amendment rights are protected. Cf. Rosenbloom v. Metromedia, 1971, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296. See also the separate opinions in Firestone v. Time, Inc., 5 Cir., 1972, 460 F.2d 712, explicating this constitutional duty of an appellate court. It should go without saying that appellate courts are zealous in their efforts to protect all rights including constitutional rights of any kind, but we have been charged by the Supreme Court with making an extra effort in the First Amendment area.

The material which is claimed to be obscene in this case consists of bound textual material with sets of unrelated photo inserts. The government offered no expert testimony on the question of the obscenity of the material, choosing instead to rely for its proof on the materials together with appropriate instructions from the court to the jury. The defendant offered the testimony of experts in the fields of literature and psychology to demonstrate that the materi-als were not obscene. The jury returned a verdict finding defendant guilty.

The panel opinion, however, set aside the jury's verdict on the ground that it was not supported by expert testimony. We turn now to a consideration of the panel's reasoning. Its limited scope is to be noted. It excludes from the reach of the requirement that expert testimony be offered, those cases which are said to fit into the holding of this court in Kahm v. United States, 5 Cir., 1962, 300 F.2d 78, described as materials which are "graced with no plot, no character development, no exemplification of independent literary efforts." 475 F.2d p. 556. It also excludes from its reach those cases where "the questioned material might be so terribly depraved and so lacking in candor that anyone would know without question that the community norm had been forsaken in the writer's quest for sexual sensationalism" or where "the appeal of the material could *only* be to the prurient interests of its readers." P. 559.

In short, the panel found expert testimony necessary only for the close cases; but even to this extent, it is an ill-founded and an unwise imposition on the prosecution. As will be seen, the panel was led into error by the positions taken in the trial court by counsel for the government and the defendant as to the prevailing law of obscenity.

## I.

The premise underlying the requirement of expert testimony seems to be the difficulty that the appellate court may experience in carrying out its duty to make an independent constitutional judgment as to obscenity *vel non*. The panel, citing Roth v. United States, 1957, 354 U.S. 476, 77 S.Ct. 1304, 1 L. Ed.2d 1498, perceived the obscenity test to be as follows:

"1. Whether the materials, taken as a whole, appeal primarily to the prurient interests of the average adult;

"2. Whether the materials are patently offensive because they go substantially beyond the customary limits of candor in their description of sex and nudity; and

"3. Whether the materials are utterly without redeeming social value."

This test, however, does not come from *Roth* but apparently represents an amalgam of the individual views of members and former members of the Supreme Court, taken from their respective concurring or dissenting opinions in *Roth* and subsequent decisions involving obscenity. It is not the prevailing test although it was the test used by the trial court and by the panel at the suggestion of counsel for the parties. Elements Numbered 2 and 3 are not a part of the prevailing test and Element Numbered 1 is incomplete in that it fails to state the test in the context of contemporary community standards.

There are only two decisions of the Supreme Court in which the test for determining obscenity has been stated in a majority opinion. The first is *Roth* and the other is the recent opinion in Kois v. Wisconsin, 1972, 408 U.S. 229, 92 S.Ct. 2245, 33 L.Ed.2d 312. The court was fragmented in the interim decisions where the obscenity test was involved and no particular test mustered a majority.[2] We therefore take our test from *Roth* and *Kois*.

First, *Roth* held that obscenity is not within the area of constitutionally protected speech or press. 354 U.S. at 485, 77 S.Ct. 1304. Then, to define obscenity the Court stated that obscene material is material which deals with sex in a manner appealing to prurient interest. 354 U.S. at 487, 77 S.Ct. 1304. The test to be used by the fact finder was stated as *whether to the average person, applying contemporary community standards, the*

dominant theme of the material taken as a whole appeals to prurient interest. 354 U.S. at 489, 77 S.Ct. 1304. Other language in *Roth* indicated that a finding of obscenity would necessarily preclude the presence of redeeming social importance in the material but this does not appear to be an element of the test. 354 U.S. at 484–485, 77 S.Ct. 1304.

The first variance from the *Roth* test appeared in Manual Enterprises v. Day, 1962, 370 U.S. 478, 82 S.Ct. 1432, 8 L. Ed.2d 639, where Justice Harlan, joined only by Justice Stewart, added to the *Roth* test the patently offensive element. No other member of the court has ever joined in this addition. Given this fact, it is clear that there is no basis for element numbered 2 of the test used in the panel opinion.

In Memoirs v. Massachusetts, 1966, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1, the test was restated by three justices as follows:

"[T]hree elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value."

Justice Clark, one of the majority of five in *Roth,* dissented on the ground that *Roth* defined obscenity as "whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeal[ed] to prurient interest." He rejected the "utterly without redeeming social value" portion of the test. Justice White, although not a member of the *Roth* court, also rejected the "utterly without redeeming social value" element.

2. See Manual Enterprises v. Day (1962), 370 U.S. 478, 82 S.Ct. 1432, 8 L.Ed.2d 639; Jacobellis v. Ohio (1964), 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793; Memoirs v. Massachusetts (1966), 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1. See Redrup v. New York (1967), 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 for the Supreme Court's lineup on the test for obscenity.

This was the last word on the test for determining obscenity until Kois v. Wisconsin, supra, where the court in a per curiam opinion representing the views of seven justices[3] interpreted the Roth test as follows:

"Material may be considered obscene when 'to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest'." 408 U.S. at 230, 92 S.Ct. at 2246, 33 L.Ed.2d at 315.

Thus it is now clear from *Kois* that the test for obscenity does not include the element "utterly without redeeming social value." This was element numbered 3 of the test used in the panel opinion.

At this point it is plain that the requirement of expert testimony as to these two elements of the test used by the panel is without premise and the reasons for the requirement to this extent are simply non-existent.

But there is more. The panel opinion is in error as to another element of the *Roth-Kois* test and, as will appear, the other premise for requiring expert testimony disappears. The panel opinion places considerable weight in opting for expert testimony on the problems inherent in the fact finder ascertaining the national standard.[4]

Again, the Supreme Court decisions must be considered in their totality. We begin with *Roth* where we find the first and only majority statement on this element of the test until *Kois*, where the

test was reiterated. That test, it must be remembered, is the following: material may be considered obscene when to "the average person, applying contemporary community standards" the dominant theme of the material taken as a whole appeals to the prurient interest. There has been no statement in any majority opinion of the Supreme Court as to the geographical scope of the term "community".

Indeed, Justice Black in his dissent in Ginzburg v. United States, 1966, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31, pointed to this as a fallacy in the test for obscenity, saying that he was uncertain as to whether "community standards" meant standards which were "world-wide, nation-wide, section-wide, state-wide, country-wide, precinct-wide or township-wide." 383 U.S. at 479, 86 S.Ct. at 952. He pointed to the discussion of the subject in Jacobellis v. Ohio, supra, where Justices Brennan and Goldberg deemed community standards to mean a nationwide or national test. Chief Justice Warren, joined by Justice Clark, disagreed. Justices Brennan and Goldberg deemed the community to be "society at large" or the "people in general". The Chief Justice and Justice Clark deemed community standards to mean just that, community standards and not a national standard. They did not believe that there was a provable national standard. It was recognized that a community approach might result in the material being proscribed as obscene in one community but not in another, but this was deemed proper in a nation with diverse communities.

---

3. Justice Douglas concurred in the reversal in *Kois*. He has "consistently adhered to the view that a State is without power to suppress, control or punish the distribution of any writings or pictures upon the ground of their 'obscenity.'" Redrup v. New York, 1967, 386 U.S. 767, 770, 87 S.Ct. 1414, 1416, 18 L.Ed.2d 515. Justice Stewart concurred in the result. His view of the law in obscenity cases is that all save hard-core pornographical material is protected by the First Amendment. Jacobellis v. Ohio, supra, 378 U.S.

at 197, 84 S.Ct. 1676 (concurring opinion); Ginzburg v. United States, infra, 383 U.S. at 497–500, 86 S.Ct. 942, and the definition of hard-core pornography in fn. 3 (dissenting opinion).

4. This is not a part of the test used by the panel; indeed no geographic limitation whatever is stated. See Element Numbered 1. The district court, however, at the request of counsel, required the jury to apply a national standard.

Justice Harlan in his opinion in Manual Enterprises v. Day, supra, joined by Justice Stewart, concluded that the proper test under the federal statute regulating the use of the mails to move obscene material, 18 U.S.C.A. § 1461, is "a national standard of decency." He found it unnecessary to reach the question whether Congress could constitutionally prescribe a "national standard of decency" which would have the consequence of denying some sections of the country access to material which might comport with prevailing community standards and yet violate the national standard.

The short of the matter is that the Supreme Court has not enunciated a national standard test in any majority opinion and no combination of members of the court making a majority have indicated approval of such a standard.

As the *Kois* court stated, the test is whether the material is obscene to the average person, applying "contemporary community standards." The court expressly recognized that this left room for some latitude of judgment in the application of the test.

This language in *Kois* came from *Roth* and we advert to *Roth* in construing the scope of the community. The opinion there quotes from the charge of the trial court to the jury in the federal prosecution under 18 U.S.C.A., § 1461:

> Both trial courts below sufficiently followed the proper standard. Both courts used the proper definition of obscenity. In addition, in the Alberts case, in ruling on a motion to dismiss, the trial judge indicated that, as the * trier of facts, he was judging each item as a whole as it would affect the normal person, and in Roth, the trial judge instructed the jury as follows:
>
> ". . . The test is not whether it would arouse sexual desires or sexual impure thoughts in those comprising a particular segment of the community, the young, the immature or the highly prudish or would leave another segment, the scientific or highly educated or the so-called worldly-wise and sophisticated indifferent and unmoved.
> . . .
>
> "The test in each case is the effect of the book, picture or publication considered as a whole, not upon any particular class, but upon all those whom it is likely to reach. In other words, you determine its impact upon the average person in the community. The books, pictures and circulars must be judged as a whole, in their entire context, and you are not to consider detached or separate portions in reaching a conclusion. You judge the circulars, pictures and publications which have been put in evidence by present-day standards of the community. You may ask yourselves does it offend the common conscience of the community by present-day standards.
>
> \* \* \* \* \* \*
>
> "In this case, ladies and gentlemen of the jury, you and you alone are the exclusive judges of what the common conscience of the community is, and in determining that conscience you are to consider the community as a whole, young and old, educated and uneducated, the religious and the irreligious—men, women and children."

We do not construe this language as using community in a national or country-wide sense.[5] We do not think that expression was intended to create misunderstanding; it is clear to us. Considering the context in which it is used, it would not appear to refer to all of the 50 states as a community. The jury charge approved in the *Roth* decision, supra, speaks of "the average person in the community", "present-day standards of

* [354 US 490, 77 S.Ct. 1311]

5. Here again, however, counsel for both parties urged a national standard on the trial and appellate court.

the community", and "the common conscience of the community." Those phrases do not connote a national standard for the determination *vel non* of obscenity. See, *e. g.*, Connally v. General Construction Co., 269 U.S. 385, 395, 46 S.Ct. 126, 70 L.Ed. 322, 330 (1925); Conley v. Valley Motor Transit Co., 139 F.2d 692 (6th Cir. 1943); Black's Law Dictionary (4th Ed. 1951); Webster's New International Dictionary (Unabridged 3d ed. 1961).·

Our concept of "the community" is suggested by the declaration of our national policy in the Jury Selection and Service Act of 1968, 28 U.S.C.A., § 1861 (Sup.1972) from which we quote:

> "It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of *the community* in the district or division wherein the court convenes." (emphasis added)

For the trial of obscenity cases under federal law "the community" should logically embrace that area from which the jury is drawn and selected. According to the Jury Act federal juries are generally drawn from a division within a district or from the district at large. Depending upon the population involved these districts vary greatly in geographical area. In a few cases a district is as large as a state; but in metropolitan areas the boundaries of a district may be comparatively small, though in such districts the population is varied and large. It does not seem reasonable or sensible to require a jury in federal criminal obscenity cases drawn from a single district or division to assess the thinking of the average person of the community, to consider the common conscience of the community, or the present-day standards of the community if the word "community" is to include all of the people within the boundaries of this vast nation North, South, East and West.

The law has been sufficiently developed to give adequate guidance to trial courts in framing instructions to be given to the jury. See the rather lengthy charge approved and set forth in *Roth,* supra. That decision together with the decisions in *Kois, Kahm* and the other cases cited above fully suffice to furnish an adequate basis for the composition of appropriate jury instructions.

At this point, it is apparent that the panel opinion was decided on an erroneous view of the test to be applied in determining obscenity. Neither the "patently offensive" nor the "utterly without redeeming social value" elements are included in the test laid down by the Supreme Court, nor is the community national in scope. Without more, it should be obvious that the panel erred in imposing on the prosecution the onerous burden of supporting its proof by expert testimony on the elements of obscenity.[6]

As we view the law, the proper course for this court to take is to make "an independent constitutional judgment on

---

6. As the government points out, in the normal course of prosecuting it sometimes uses experts, depending on the circumstances of each case.

There are decisions which make expert testimony on the part of the prosecution mandatory. See United States v. Klaw, 2 Cir., 1965, 350 F.2d 155; In re Giannini, 1968, 69 Cal.2d 563, 72 Cal.Rptr. 655, 446 P.2d 535. But see United States v. Brown, E.D.Va., 1971, 328 F.Supp. 196, aff'd No. 71-1759, (4 Cir., Jan. 31, 1972), and United States v. Wild, 2 Cir., 1969, 422 F.2d 34, holding that expert testimony is not required where the material in question constitutes hard core pornography. In *Ginzburg*, the Supreme Court noted that in the obscenity cases it had decided since *Roth*, the materials had been regarded "as sufficient in themselves for the determination of the question" of obscenity. 383 U.S. at 465, 86 S.Ct. at 944. It is to be noted that this statement is not limited to cases involving hard core pornography. Indeed, the Supreme Court has not adopted a hard core pornography distinction or class of cases in the law of obscenity. See *Ginzburg*, 383 U.S. at 497-500, 86 S.Ct. 942 (Dissenting op. of J. Stewart).

the facts of the case as to whether the material involved is constitutionally protected." *Jacobellis*, supra. In so proceeding, there is a concomitant duty to follow the test laid down by the Supreme Court for determining obscenity: whether "to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." *Kois*, supra, 408 U.S. at 230, 92 S. Ct. at 2246, 33 L.Ed.2d at 315. Having examined the material in question, we have no difficulty in applying this test without the help of expert testimony in the record on the part of the prosecution.[7]

## II.

When judges become entrapped and entoiled in ambiguous thickets of judge-made law they should not use their own confusion as a barricade from which to ambush Congressional enactments. In such situations juries have the ability, under proper instructions, to reach fair, sensible and practical conclusions free of the ambivalence, uncertainty and vacillation of the experts—the judges. Indeed, the wisdom of such an approach is dramatically illustrated by the panel opinion.

Early in the opinion it is clearly and emphatically stated:

"We have little trouble in finding the books involved in the instant case to be *vile, filthy, disgusting, vulgar,* and, on the whole, quite uninteresting. We do, however, have difficulty in equating these adjectives with the constitutional definition of obscenity." (475 F.2d page 552—emphasis added.)

We, too, have seen the material involved in this case and join unreservedly in the first sentence of the above quoted conclusion and judgment. The material is so vile, filthy, vulgar and revolting that a specific description of it in this opinion would be repulsive and nauseating.

We are unable to agree with the second sentence of the quotation which intimates, if it does not hold, that the materials are not sufficiently vile, filthy and vulgar to meet the definition of obscenity. Strangely, in spite of the above quoted description of the materials under consideration, the opinion concludes:

"We wish to make it perfectly clear what we hold, and what we fail to hold today in the instant case. We have expressed no opinion on the issue of whether the material involved here is or is not obscene. In fact, our inability to do so is the basis for our holding that expert testimony is required on the elements of obscenity in order to furnish juries and this Court with an objective basis for deciding on the issue of first amendment rights." (Page 559)

Fully agreeing with the accuracy of the panel's description of the materials, it is difficult to discern the necessity for the expert testimony required by the opinion.

We do not denigrate the value or utilization of qualified expert testimony in obscenity cases. Parties should be permitted to use the testimony of qualified experts in this type of case just as in other cases, but their opinions on the subject should not control the case or necessarily form the basis of its final disposition. The pictures, books, publications or other materials involved may serve as evidence to contradict the opinion of the expert. It has long been the rule that triers of fact, judges and juries alike, are not required to accept expert opinions. Dayton P. & L. Co. v. Public Utilities, 292 U.S. 290, 54 S.Ct. 647, 78 L.Ed. 1267, 1275 (1934); Sartor v. Arkansas Natural Gas, 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967, 972 (1944); China Union Lines et al. v. A. O. Anderson & Co. et al., 364 F.2d 769, 791 (5th Cir. 1965); Webster v. Offshore Food Serv., Inc., 434 F.2d 1191, 1193 (5th Cir.

7. The panel decision, dated January 11, 1972, preceded the *Kois* opinion and this fact may point to a reason for the use by the panel of the incorrect test. It does not explain the dissent's slavish adherence to the panel opinion in the face of *Kois*.

1970), cert. denied, 404 U.S. 823, 92 S. Ct. 44, 30 L.Ed.2d 50 (1971).

■ Even though a judge is convinced that the material is vile, filthy, vulgar and disgusting, he may nevertheless permit a qualified expert to give testimony to the contrary, but such a situation presents a classic example of a factual issue which should be resolved by a jury under proper and impartial instructions from the judge. There is profound wisdom in the rule which permits judges and juries after proper consideration to disregard the opinions of experts. Many experts, all equally well qualified, often disagree in well established fields of knowledge and research such as law, medicine and theology. Typical of such disagreements is the testimony of physicians in personal injury, criminal and social security cases. They disagree as to the diagnosis and the percentage of disability involved. Time and time again courts review criminal cases in which equally well qualified psychiatrists are diametrically opposed to each other on the issue of mental illness or insanity. There are now a substantial number of cases in which different factions of the same religious group are litigating over disputed ecclesiastical concepts which ultimately lead to the necessity of resolving the ownership of valuable property. Indeed judges, presumed to be legal experts, often disagree. Experts are useful and their failure to agree does not indicate any disqualification. We simply do not believe that an obscenity case cannot be tried without the testimony of an expert. See United States v. Wild, 422 F.2d 34 (2d Cir. 1970), cert. denied, 402 U.S. 986, 91 S.Ct. 1644, 29 L.Ed.2d 152 (1971).

■ As earlier indicated it is our view that in obscenity cases the judge should first examine the materials involved to determine whether as a matter of law they are protected by the First Amendment. He should be guided by the decisions we have cited earlier, particularly *Roth* and *Kois*. If he concludes that they are constitutionally protected, they are not to be shown to the jury. If he reaches the conclusion that they are not so protected, the materials involved, any expert testimony offered, and all other necessary and appropriate evidence should be submitted to the jury, with proper instructions from the court, for a determination of guilt or innocence of the defendant under the statute involved. Title 18 U.S.C.A., § 1462. If it chooses to do so, the jury may give absolutely no weight to the initial determination of the court that the materials are not constitutionally protected.[8]

The procedure whereby juries decide complicated and intricate questions involving subjective and objective considerations is deeply engrained in American jurisprudence; they decide issues that are far more complicated than whether pictures, books, publications or other materials are obscene, lewd, lascivious or filthy. See Kahm v. United States, supra, n. 10. Juries decide the question whether a defendant is guilty beyond a reasonable doubt in all sorts of complicated criminal cases. They fix the value of pain and suffering. They pass upon the existence of certain mental attitudes and the state of mind of an individual at a particular time and

8. The procedure described is commonplace in the trial of criminal cases. A prime example arises when the prosecutor offers a confession by the defendant and it is challenged as being involuntary. The decisions in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) and Sims v. Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967), clearly describe the required procedure now known to all courts in determining whether a confession is voluntary or involuntary. As a matter of constitutional law the jury is not to hear the confession unless and until the trial judge has determined that it was freely and voluntarily given. The rule allows the jury, if it so chooses, to give absolutely no weight to the confession in determining the guilt or innocence of the defendant but it is for the judge to make the initial determination of voluntariness.

place in resolving questions of intent, malice, premeditation, willfulness, sanity and insanity, and whether a confession is voluntary or involuntary. They are constantly called upon to decide what a reasonably prudent person would have done in circumstances and events which have already transpired. They resolve enigmatic, abstruse questions of negligence, contributory negligence and comparative negligence, often fixing the degree of negligence of the plaintiff and the defendant by precise percentage points.

All jury determinations do not involve constitutional issues, but many of them do require the resolution of constitutional questions of the highest priority involving life, liberty and the opportunity to engage in the pursuit of happiness. Roth v. United States, *supra*, authorizes a jury to assess "the common conscience of the community by present-day standards" and to determine the impact of alleged obscene materials "upon the average person in the community."

■ Giving appropriate consideration to the foregoing principles, it is our conclusion that the prosecution in an obscenity case of this nature should not be burdened with the requirement to support its proof by expert testimony.

We have fully considered the other contentions made by the appellant Groner and conclude that there is no merit in any of them. The judgment of conviction is affirmed.

AINSWORTH, Circuit Judge, with whom GEWIN, BELL, COLEMAN, DYER, CLARK, INGRAHAM and RONEY, Circuit Judges, join (concurring):

I do not agree with the original panel decision that the defendant's conviction for using a common carrier in interstate commerce to transport obscene books must be reversed because the United States did not present expert testimony to support its case.

The criminal statute enacted by Congress, under which defendant was convicted, makes it unlawful to use a common carrier for carriage in interstate commerce of "any obscene, lewd, lascivious, or filthy books . . . ." (18 U.S.C. § 1462.) The panel decision states:

"We have little trouble in finding the books involved in the instant case to be vile, filthy, disgusting, vulgar, and, on the whole, quite uninteresting. We do, however, have difficulty in equating these adjectives with the constitutional definition of obscenity."

The panel demonstrates its frustration and seeming inability to give effect to the statute by its statement that "[w]e are completely incapable of applying the test in the instant case" and that "we find ourselves completely incapable of ruling on this issue." No lack of desire to enforce the criminal statute pertaining to the interstate transportation of obscene, lewd, lascivious, or filthy books, is apparent in the panel view—only a stated inability to do so because a determination whether the material is obscene cannot be made here "in the absence of expert testimony."

I cannot reconcile the panel's conclusion with its explicit finding that the books involved are "vile, filthy, disgusting, vulgar." So the books are, and the reviewing court's finding to that effect requires that we affirm the jury's finding of guilt in this case under the evidence presented.

Accurate guidelines for our use here, based on past decisions of the Supreme Court, are hard to find. Nevertheless, the test in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) is, as the panel (as well as the majority) points out, still the law in our highest court. *See* United States v. Reidel, 402 U.S. 351, 91 S.Ct. 1410, 28 L.Ed.2d 813 (1971).

The jury in this case was instructed by the trial court under the *Roth* standard and its finding of guilt carried with it the implicit finding that the books involved were obscene, lewd, lascivious, or filthy.

So far as we have been able to determine, the Supreme Court has not yet said, in any case, that the lack of expert testimony in an obscenity case is fatal to a conviction. The panel, however, supports its view with citation of the Second Circuit's holding in United States v. Klaw, 2 Cir., 1965, 350 F.2d 155, and the California Supreme Court's holding in In re Giannini, 1968, 69 Cal.2d 563, 72 Cal.Rptr. 655, 446 P.2d 535. (The Second Circuit subsequently affirmed a conviction in which there was no expert testimony in United States v. Wild, 2 Cir., 1969, 422 F.2d 34.)

I reject the reasoning in *Klaw* and *Giannini* and will not wring my hands in despair because of the difficulty of defining what is meant by the terms "obscene" or "obscenity." It cannot be doubted "that contemporary American society rejects and will not tolerate the dissemination of hard-core pornography."[1] The federal criminal statute here reflects that precept of our culture. Expert testimony to provide information to the fact finder may be helpful in obscenity cases but is not indispensable. At times it may confuse more than help. A swearing contest between opposing literary or social experts may well turn a case involving criminal sanctions pertaining to obscenity into a farce. This is not to say that such testimony may not be received by the trier of fact, but only that it should not be required. The juror, as the so-called reasonable man or average man, can determine as well as most experts whether the involved material is obscene within the definition of *Roth* and its progeny. It is no more difficult for the fact finder to make such a determination than it is to apply such elusive concepts as neg-

ligence and proximate cause or in the area of antitrust such broad phrases as "restraint of trade" and "every contract, combination . . . or conspiracy."[2]

I adhere to the views expressed by us previously in Kahm v. United States, 5 Cir., 1962, 300 F.2d 78. In that case the appellant contended "that the Government made no case for the jury because no witnesses were called to testify or give their opinions as to whether the mailed material here in question would come within the definition of obscene material stated in *Roth*." *Id.* at 84. The Court responded to the argument by its holding that the jury "was fully capable of applying those standards" [i. e. those in *Roth*]. Finally, the Court said, "We think it may fairly be said that no amount of testimony by anthropologists, sociologists, psychologists or psychiatrists could add much to the ability of the jury to apply those tests of obscenity to the materials here present." *Id.* at 84.[3]

To hold, in effect, that we must turn the application of the obscenity statutes over "to a collection of randomly chosen Ph.D.'s" as expert witnesses in such matters, is to require abdication of the judicial function of the judge or jury as triers of fact.[4] Under our system of law it is the trier of fact who is responsible for the legal determination whether the materials involved are obscene within the definition of that term as explicated in *Roth*. The jury which is drawn from a cross-section of the community embodies the average or reasonable man and that collective group is as capable as any other of making the critical determination necessary under proper instructions from the trial judge. With the materials involved in this case it

---

1. Lockhart & McClure, Censorship of Obscenity: The Developing Constitutional Standards, 45 Minn.L.Rev. 5, 112 (1960).

2. *See* Stern, Toward a Rationale for the Use of Expert Testimony in Obscenity Litigation, 20 Case Western Reserve L. Rev. 527, 545 (1969). Application of obscenity statutes can only be made on a case-by-case basis and "courts must

undertake to make law for each case as it is presented." *Id., supra*, at 545.

3. The panel quoted in full the paragraph from which we have excerpted these quotations from *Kahm*. It distinguished the present decision from *Kahm* on the facts, but we discern no substantial difference in principle.

4. *Cf.* Stern *supra*, at 566–567.

would be difficult, if not impossible, to find an expert whose testimony would be helpful to the average or reasonable men composing the jury. The views of such a witness would be subject to serious question and their probative value of little consequence. We can discern for ourselves in reviewing this case, as the jury did initially, that the materials involved are obscene within the definition of *Roth*. To seek an expert to reenforce our views would be to gild the lily. Such an expert would be no more suitable to draw a conclusion or furnish information in this regard than would judges and juries.

The panel unwittingly struck a blow in behalf of the peddler of obscene material whose motives are "those of cynical, commercial gimmickry," [5] and made it more difficult for the Government to give effect to the will of Congress which enacted the obscenity statute involved here.

Believing the panel decision to be incorrect, as a matter of law, I would affirm the conviction.

CLARK, Circuit Judge (concurring):

There is nothing of substance I could add to the much too much that has been written in this field of the law. The principal purpose of this opinion is to confess error in concurring in the original panel reversal of this cause. I am now sure that a rule requiring expert opinion evidence in obscenity cases is not required by precedent, is wrong, and would compound rather than solve any problem in this bewildering area. I find

the logic of Part II of Judge Gewin's en banc opinion and Judge Ainsworth's concurrence therein to be compelling.[1] I do, however, adhere to my view that Judge Thornberry correctly distilled the essence of *Roth* in the three part test which he originally enunciated and that this test is still viable. Therefore I do not concur in Part I of Judge Gewin's en banc opinion.

Subsequent events have made it apparent that our panel erred in assuming it to be settled law that the trial judge correctly instructed the jury to apply a nationwide standard. At this term the Supreme Court has heard argument on this geographical issue in Kaplan v. California, No. 71–1422, see 12 Crim.L.Rep. 4053–4055, and the outcome remains open.[2] But the ultimate resolution of this question does not control my judgment that Groner's case was free of error. Since the jury was instructed on the more inclusive standard, the verdict would still be secure if it turns out that the narrower, local community standard should have been applied.

A properly instructed jury found Groner violated 18 U.S.C. § 1462 because it found that the materials he caused to be transported in interstate commerce were lewd despite the expert testimony he offered that they were not. While the First Amendment does not protect obscenity, it does trigger a unique form of reexamination of the jury's verdict at the appellate level. Having examined the materials as required, I am no more impressed with the sophistical opinions expressed by Groner's experts as to its

5. *See* views of Rabbi Raymond Apple in the Report of the Longford Committee Investigating Pornography, Coronet Books ed. p. 129 (1972).

1. This position is reached after full consideration of Judge Coffin's scholarly opinion and Judge Aldrich's intriguing dissent in United States v. Palladino, 475 F.2d 65 (1st Cir. 1973).

2. Despite the considerable doubts about the use of wholly artificial national standards which were inartfully expressed in my former concurrence and which I still

entertain, further study certainly indicates that Judge Thornberry's panel opinion may be correct in speculating that a national standards test could be applicable. The crime charged here is not only an interstate offense against the national sovereign, but one which can be prosecuted in any one of many districts in many states under the venue provisions of 18 U.S.C. § 3237(b). The difficulty of choosing, instructing on, and applying some local standard in such a situation is apparent.

nonprurience than were the *nisi prius* triers of fact. Other juries and other judges may have differed in their appraisal of similar publications in other proceedings; but now being required to reach the merits of the verdict here, I sustain it without the slightest hesitation. Whoever applies the adage "evil lies in the eye of the beholder" to this smut either deceives himself or disagrees with the rule of *Roth*. Recondite, abstract First Amendment reasoning may becloud but cannot conceal from one who views them the plain truth that these "books" were produced and purveyed purely as pornography—*res ipsa loquitur*.[3] The judgment of conviction was correct and is due to be affirmed.

THORNBERRY, Circuit Judge, with whom BROWN, Chief Judge, WISDOM, GOLDBERG, GODBOLD, SIMPSON and MORGAN, Circuit Judges, join (dissenting):

With all the deference that is due my brothers of the majority, I cannot subscribe to the views they have expressed here. By committing the determination of obscenity to a jury's unguided perusal of allegedly obscene material, a majority of this Court today permits claims of First Amendment protection to be foreclosed through a process akin to *res ipsa loquitur*. What is worse, this novel treatment of constitutional liberties appears to me to rest on a misunderstanding, shared by seven members of the majority, of the accepted test for determining whether material is obscene in the constitutional sense.

Some six months after the panel opinion in the instant case was published, the Supreme Court reversed a state obscenity conviction in a *per curiam* opinion. Kois v. Wisconsin, 408 U.S. 229, 92 S.Ct. 2245, 33 L.Ed.2d 312 (1972). In the course of holding that the material before it was not obscene, the Court remarked that "[m]aterial may be considered obscene when 'to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest'," quoting Roth v. United States, 354 U.S. 476, 489, 77 S. Ct. 1304, 1311, 1 L.Ed.2d 1498 (1957). Because the elements of "redeeming social importance" and "patent offensiveness" are not expressly alluded to in this quoted language from *Roth* and *Kois,* seven Judges conclude that these elements are not presently part of the recognized test for obscenity—indeed, that they have never been part of the test. In my opinion, this conclusion finds no support in either *Roth* or *Kois*.

In holding that obscenity was outside the protection of the First Amendment, Justice Brennan, writing for a majority of five in *Roth,* observed that obscene utterances had been traditionally denied the protection of the law *precisely* because obscenity as a mode of expression was utterly without redeeming social importance:

> All ideas having even the slightest redeeming social importance—unorthodox ideas, controversial ideas, even ideas hateful to the prevailing climate of opinion—have the full protection of the guaranties [of the First Amendment], unless excludable because they encroach upon the limited area of more important interests. [Footnote omitted.] But implicit in the history of the First Amendment is the rejection of obscenity *as utterly without redeeming social importance.* . . .

354 U.S. at 484, 77 S.Ct. at 1309 (emphasis added).[1]

---

3. Perhaps someone who disagrees can take up the gauntlet by picking some paragraph—any paragraph—from the pages of one of these "books" and demonstrating that it contains that necessary minimum single iota of redeeming social value. I cannot.

1. Admittedly, the formulation of the *Roth* test upon which the majority relies so heavily and which was quoted in *Kois* refers expressly only to the element of prurient appeal. *Roth,* 354 U.S. at 489, 77 S.Ct. at 1311. But to say that this formulation necessarily excludes the other

Thus, far from being merely a formulation by individual Justices that has never commanded a majority, the utter lack of redeeming social value was, in the eyes of the *Roth* majority, the *sine qua non* of obscene, and therefore unprotected, expression. And the vitality of this element continued undiminished in the most recent Supreme Court obscenity case, *Kois,* in which some of the material in question was declared not to be obscene precisely because it bore "the earmarks of an attempt at serious art." 92 S.Ct. at 2247.

Likewise unsupported by a reading of *Roth* is the claim that "patent offensiveness" is but a "variant" of the *Roth* test advanced by only two Justices in Manual Enterprises v. Day, 370 U.S. 478, 82 S. Ct. 1432, 8 L.Ed.2d 639 (1962). Footnote 20 of the *Roth* majority opinion clearly answers such a contention:

> We perceive no significant difference between the meaning of obscenity developed in the case law and the definition of the A.L.I. Model Penal Code, § 207.10(2) (Tent. Draft No. 6; 1957), viz.:
>
> " . . . A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest: i.e., a shameful or morbid interest in nudity, sex, or excretion, *and if it goes substantially beyond customary limits of candor* in description or representation of such matters . . . ."

354 U.S. at 487, 77 S.Ct. at 1310 n. 20 (emphasis added).

Since the *Kois* Court relied heavily on *Roth,* it can hardly be said that *Kois* suggests a rejection of an element so clearly present in the *Roth* test.

Thus, seven Judges misconstrue *Roth* and read too much into *Kois.* Those decisions make it clear that the panel's formulation of the three-pronged test for obscenity is correct. But the question facing our court in this case is not so much *which* test to apply, as it is *how* the jury, and a reviewing court, are to apply the standard. Simply stated, are First Amendments rights to turn on the prejudices of jurors and appellate judges or are they to be governed by proof which the jury, concededly, may overlook but which can supply an objective basis for decision by a reviewing court? The considerations favoring the panel's answer to this question are adequately stated in the panel opinion and need not be reiterated here. But it is hardly any answer to say, as do the majority in summarily dismissing appellant's substantial claim that the material in the instant case is not obscene as a matter of law, that it is "easy" to hold the materials obscene because we find them "vile, filthy, disgusting, vulgar, and on the whole, quite uninteresting." To confound these epithets with "obscenity" in the constitutional sense is to risk falling victim to the same confusion that both the *Roth* and *Kois* Courts warned against when they held that "sex and obscenity are not synonymous." 354 U. S. at 457, 77 S.Ct. at 1310; 92 S.Ct. at 2246–2247.[2]

---

two elements of the panel's three-faceted test is to ignore the context in which the formulation occurred. That context was Justice Brennan's discussion of the "early leading standard of obscenity," which "allowed material to be judged merely by the effect of an isolated excerpt upon particularly susceptible persons." 354 U.S. at 488–89, 77 S.Ct. at 1311. When the "standard" quoted in *Kois* is thus considered in context, it is apparent that the thrust of the statement is that the effect of the material *as a whole* (rather than of isolated excerpts, as under the early standard) on the *average person*

(rather than on "particularly susceptible individuals") is controlling. Taken in context, the quoted formulation of the *Roth* "test" sheds absolutely no light on the question whether redeeming social value or patent offensiveness are relevant in determining whether material is obscene.

2. In this regard, I am compelled to point to another error in the opinion of the *en banc* Court. Noting that in Ginzburg v. United States, 383 U.S. 465, 86 S.Ct. 942, 944, 16 L.Ed.2d 31 (1966), the Court stated that materials had always been

As to the contention that the jury is to apply "local," rather than "national," standards in determining prurient appeal, it is well to recall that in the instant case we are asked to interpret a *federal* statute (not a state statute as was involved in *Kois*) and a *National* Constitution. Allowing the meaning of obscenity, and thus the boundaries of protected expression, to fluctuate county by county or district by district would hardly ameliorate the confusion that characterizes this area of the law. And to argue that the "community standards" to be applied are those existing only in the relatively confined area from which federal juries are to be chosen, is to ignore the fact that appellant could have been tried in, and his jury selected from, either the district from which the materials were shipped (the Southern District of California), the district where they came to rest (the Northern District of Texas), or any district through which they passed en route. 18 U.S.C. § 3237 (offenses begun in one district and completed in another). I had thought that constitutional rights do not depend on the Government's choice of forum; but such an anomaly may well be the result of permitting juries to apply diverse parochial standards to material said to be obscene.

Of course, as Judge Clark's concurring opinion recognizes, the debate between "national" and "local" community standards will remain academic until the Supreme Court decides several cases now pending before it, including Kaplan v. California, No. 71–1422, 41 U.S.L.W. 3157 (Oct. 3, 1972). But whatever the outcome of that controversy, the problems inherent in applying the "redeeming social value" element of the obscenity test will still require the introduction of extrinsic evidence in obscenity prose-

cutions. As the First Circuit said recently in a decision requiring the introduction of such evidence:

[I]f we are to prevent the obscenity law's unusual provision for judgment of a publication's value from becoming the passing majority's tool for repressing expression it finds distasteful, unusual, discomforting, or simply threatening, we must have witnesses, with psychological sociological, medical, historical, or literary expertise, to explain objectively the total absence of redeeming social value.

United States v. Palladino, 475 F.2d 65 (1st Cir., 1973).

For these reasons, I respectfully dissent.

---

regarded "as sufficient in themselves for the determination of the question" of obscenity, this Court's opinion suggests that the Supreme Court has previously held that no extrinsic evidence is required in obscenity cases. This is erroneous, because the context in which the quoted excerpt from *Ginzburg* occurred was a

discussion of the question whether factors such as the manner of advertising the materials were relevant to the determination of obscenity. This question is not before us in the instant case; the issue is *how* the jury is to evaluate "the materials themselves."