541 F.2d 810
 UNITED STATES of America, Plaintiff and Appellant,
v.
OBSCENE MAGAZINES, FILM AND CARDS, Defendant,
Michael Mahr, Claimant and Appellee.
UNITED STATES of America, Plaintiff and Appellant,
v.
THIRTY-SEVEN (37) PHOTOGRAPHS, Defendant,
Milton Luros, Claimant and Appellee.
 Nos. 75-1279, 75-1290.
 United States Court of Appeals,
Ninth Circuit.
 Aug. 9, 1976.
 
 James R. Dooley, Asst. U. S. Atty. (argued), Los Angeles, Cal., for plaintiff and appellant.
 Stanley Fleishman (argued), of Fleishman, McDaniel, Brown & Weston, Beverly Hills, Cal., for claimants and appellees.
 Before SMITH,* TRASK, and GOODWIN, Circuit Judges.
 GOODWIN, Circuit Judge:
 
 
 1
 We affirm the denial of forfeiture in these two in rem obscenity forfeiture proceedings which were tried to the court without a jury. The government has appealed, and the appeals have been combined.
 
 
 2
 While the exhibits differ from each other, all depict human bodies, or parts thereof, in various postures of reproductive or erotic behavior. Some, if not all, of the exhibits probably would be patently offensive to large numbers of involuntary viewers. Many of the exhibits, however, might not offend other viewers. The district court was not persuaded that any of the exhibits were so patently offensive, when measured by the community standards of the Los Angeles area, as to warrant declaring them contraband and forfeit to the government.
 
 
 3
 The government asserts here that the district court abdicated its duty to evaluate each exhibit according to the legal standards of Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), and Hamling v. United States, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), as required in the mandate remanding these cases to the district court following earlier appeals. See United States v. Thirty-Seven (37) Photographs, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971).
 
 
 4
 While the district court might have articulated its reasoning in the language of the cited cases, we interpret the challenged judgments as ultimate findings that the government had failed in its burden of persuasion. The government took the position in each case that the exhibits spoke for themselves and that no evidence of community standards was necessary.
 
 
 5
 In view of the trial judge's expressed doubt about the community standards of the Los Angeles region, we do not believe that the trial judge's characterization of his decision as one of nonobscenity "as a matter of law" requires another trial. The colloquy tells us that the judge was not persuaded that the exhibits in question were any worse than the photographs found in magazines for sale in various sections of the city and its surrounding communities. Thus his "matter of law" statement could be interpreted as a belief that there was a failure of proof "as a matter of law" even though his choice of "matter of law" nomenclature does appear to be less felicitous than a simple finding of "not proven".
 
 
 6
 United States v. Hamling, supra, supports the proposition that, if the government does rely upon exhibits which meet the Miller test and wins, the defendant is not entitled to a reversal for insufficient evidence. It does not follow, however, that, if the government chooses to rest its case upon the exhibits and loses, the trier of fact must be reversed.
 
 
 7
 Here, it is true that the trier could have found the exhibits obscene under the "patently offensive" test of Miller v. California, supra, but he did not do so. Had there been a jury, it could, perhaps, supply its own views of community standards. The judge, a resident of the general area, felt unable to assert with any confidence that, by the standards of the Los Angeles area, the exhibits were sufficiently offensive to require him to declare them contraband. Again, he may have expressed himself badly, but we doubt that upon another trial he would reach a different result.
 
 
 8
 The cases do not hold that a trier of fact must, as a matter of law, respond at a level of outrage equal to the minimum level that will pass First Amendment muster under Miller.
 
 
 9
 We view these cases as cases in which the government has the burden of convincing the trier of fact. Here the government failed to do so. It is difficult enough for appellate courts to review censorship value judgments after the trier of fact has convicted, without having to review essentially fact-finding decisions after the government has lost.
 
 
 10
 Affirmed.
 
 TRASK, Circuit Judge (dissenting):
 
 11
 I find fault with the result reached by the majority, because the trial court found as a conclusion of law that:"In the absence of evidence of current contemporary standards in Los Angeles, the seized materials as a matter of law cannot be found obscene."
 
 
 12
 Although the practice of using expert testimony or other extrinsic evidence to prove obscenity may have been considered a necessity at one time, see Smith v. California, 361 U.S. 147, 165, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959) (Frankfurter, J., concurring), the Supreme Court made it clear in two cases decided in 1973 that this was not a requirement. In Paris Adult Theatre I v. Slaton, 413 U.S. 49, 56, 93 S.Ct. 2628, 2634, 37 L.Ed.2d 446 (1973), the Court stated:
 
 
 13
 "(It was not) error to fail to require 'expert' affirmative evidence that the materials were obscene when the materials themselves were actually placed in evidence. . . . The films, obviously, are the best evidence of what they represent. 'In the cases in which this Court has decided obscenity questions since Roth, it has regarded the materials as sufficient in themselves for the determination of the question.' Ginzburg v. United States, 383 U.S. 463, 465, 86 S.Ct. 942, 944, 16 L.Ed.2d 31 (1966)." (Emphasis added.)
 
 
 14
 On the same day, the Court reaffirmed this view by its decision in Kaplan v. California, 413 U.S. 115, 121, 93 S.Ct. 2680, 2685, 37 L.Ed.2d 492 (1973):
 
 
 15
 "In Miller v. California, (413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973)), the Court today holds that the ' "contemporary community standards of the State of California," ' as opposed to 'national standards,' are constitutionally adequate to establish whether a work is obscene. We also reject in Paris Adult Theatre I v. Slaton, . . . any constitutional need for 'expert' testimony on behalf of the prosecution, or for any other ancillary evidence of obscenity, once the allegedly obscene material itself is placed in evidence. Paris Adult Theatre I, 413 U.S., at 56, 93 S.Ct., at 2634-2635. The defense should be free to introduce appropriate expert testimony, see Smith v. California, 361 U.S. 147, 164-165, 80 S.Ct. 215, 224-225, 4 L.Ed.2d 205 (1959) (Frankfurter, J., concurring), but in 'the cases in which this Court has decided obscenity questions since Roth, it has regarded the materials as sufficient in themselves for the determination of the question.' " (Emphasis added.)
 
 
 16
 The materials here were before the court and thus were sufficient "in themselves for the determination of the question" had they been measured by the standards in Miller v. California, 413 U.S. 15, 25, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).
 
 
 17
 In many obscenity cases, a jury is empaneled to act as the factfinder. As such, it is clear that a jury need not have experts to explain to it whether the materials in question are offensive to the average person, applying contemporary community standards. In fact, in this area of the law the Court has pointed out that:
 
 
 18
 "This is not a subject that lends itself to the traditional use of expert testimony. Such testimony is usually admitted for the purpose of explaining to lay jurors what they otherwise could not understand. Cf. 2 J. Wigmore, Evidence §§ 556, 559 (3d ed. 1940). No such assistance is needed by jurors in obscenity cases; indeed the 'expert witness' practices employed in these cases have often made a mockery out of the otherwise sound concept of expert testimony. See United States v. Groner, 479 F.2d 577, 585-586 (CA5 1973); id., at 587-588 (Ainsworth, J., concurring). 'Simply stated, hard core pornography . . . can and does speak for itself.' United States v. Wild, 422 F.2d 34, 36 (CA2 1970), cert. denied, 402 U.S. 986, 91 S.Ct. 1644, 29 L.Ed.2d 152 (1971)." Paris Adult Theatre I v. Slaton, supra, 413 U.S. at 56 n. 6, 93 S.Ct. at 2634.
 
 
 19
 The Supreme Court in Miller v. California, 413 U.S. 15, 25, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), gave examples of hard core pornography that could constitutionally be proscribed by state law.[1] It also stated in United States v. 12 200-ft. Reels of Super 8mm. Film, 413 U.S. 123, 130, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973), that those examples applied to define obscenity under 19 U.S.C. § 1305(a), the statute under consideration here.
 
 
 20
 Here, for example, the materials in United States v. Thirty-Seven Photographs, No. 75-1290, consisted in part of photographs approximately 10 inches by 15 inches in size depicting explicitly both normal and perverted sexual relations. Some of the photographs were taken as such close range that the eyes of the viewer were placed in stark realism within a few feet of the subject matter. It was stipulated that the photographs were imported for a commercial purpose. 402 U.S. 363, 377-78, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971) (Harlan, J., concurring). They were to be included in a book to be named The Kama Sutra of Vatsyayana to candidly describe a large number of sexual positions. Id. at 366, 91 S.Ct. 1400, (White, J.).
 
 
 21
 When the trial was before the court and not the jury, as here, it was the duty of the court to learn for itself what the applicable standards were and to apply them. The statute which the trial court was called upon to interpret was 19 U.S.C. § 1305(a). The Supreme Court said in United States v. 12 200-ft. Reels of Super 8mm. Film, supra, 413 U.S. at 130, 93 S.Ct. at 2670, that it was prepared to construe section 1305(a) when using the word "obscene" to mean
 
 
 22
 "patently offensive representations or descriptions of that specific 'hard core' sexual conduct given as examples in Miller v. California . . . ."
 
 
 23
 Thus, if the trial court looked at the exhibits and found them to consist of portrayals of explicit sex, normal or perverted, it became his responsibility to find them proscribed as obscene. He may not escape that duty by saying that there was no evidence that the materials exceeded contemporary community standards. Were the case being tried to a jury, the jury would have to be instructed as to the definition of obscenity. The court would have told the jurors in terms of Miller, supra. But here the judge was the trier of fact. If the photographs met the Miller standard, they were in fact and on their face obscene. It is irrelevant for him to speculate on what a Los Angeles jury might find. He is that Los Angeles jury. The Supreme Court has told him what obscenity consists of in terms of photographs. He is bound to follow it as defined.
 
 
 24
 The majority deplores that this court is compelled to review "censorship value judgments" as though it is a denigrating responsibility beneath our dignity or unworthy of our effort. Congress establishes our jurisdiction and enacts the laws encompassing our responsibility to uphold the "Constitution and laws of the United States." The law of obscenity is a part of that responsibility, and I find no reason to deplore that duty. The enforcing of the law of obscenity may no more be disparaged as censorship than the enforcing of the general criminal law may be denounced as repressive. Mr. Justice Brennan responded to this subject in Jacobellis v. Ohio, 378 U.S. 184, 190, 84 S.Ct. 1676, 1679, 12 L.Ed.2d 793 (1964), where he said:
 
 
 25
 "Nor can we understand why the court's performance of its constitutional and judicial function in this sort of case should be denigrated by such epithets as 'censor' or 'super-censor.' In judging alleged obscenity the Court is no more 'censoring' expression than it has in other cases 'censored' criticism of judges and public officials, advocacy of governmental overthrow, or speech alleged to constitute a breach of the peace. Use of an opprobrious label can neither obscure nor impugn the Court's performance of its obligation to test challenged judgments against the guarantees of the First and Fourteenth Amendments and, in doing so, to delineate the scope of constitutionally protected speech."
 
 
 26
 I would reverse the judgment of the trial court and remand the case for a new trial.
 
 
 
 *
 The Honorable J. Joseph Smith, Senior United States Circuit Judge for the Second Circuit, sitting by designation
 
 
 [1]
 Among them:
 "(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated." Miller v. California, supra at 25, 93 S.Ct. at 2615.