UNITED STATES of America, Plaintiff,

v.

2,200 PAPER BACK BOOKS,
Defendants,

Meridian Exports, Inc., Claimant.

MERIDIAN EXPORTS, INC., in behalf of itself, and all other persons similarly situated, Cross-Complainants-Appellants,

v.

UNITED STATES of America,
Cross-Defendant-Appellee.

Nos. 75–1291 and 75–1310.

United States Court of Appeals,
Ninth Circuit.

Nov. 30, 1977.

Peter H. Kane (argued), Los Angeles, Cal., for plaintiff.

Stephen F. Rhode (argued), Beverly Hills, Cal., for defendants.

Before TUTTLE,* BARNES, and WALLACE, Circuit Judges.

BARNES, Senior Circuit Judge:

On or about January 28, 1974,[1] Defendants—2,200 paperback books [2] arrived in the Port of Los Angeles aboard a vessel originating from Japan. On March 18, after an inspection by a customs official, they were confiscated for being in violation of 19 U.S.C. § 1305 (prohibiting importation of obscene material). On March 28, a Complaint for Forfeiture was filed in the United States District Court and a Warrant for Arrest in Action In Rem was issued. All but 26 books were seized by the United States Marshal on April 26.[3] On April 30, a certified letter was sent by the United States Attorney to Claimant Meridian Exports, Inc. ("Meridian") advising them of the foregoing events and notifying them that a claim for return of the books would have to be filed by May 28, 1974, and an Answer within 20 days thereafter, pursuant to Rule 1(a) of the Local Admiralty Rules of the United States District Court for the Central District of California.[4] On May 1, Meridian was personally served with the Complaint and other papers; and on May 8, a Notice of Seizure was published in the Los Angeles Daily Journal.

On May 29, the remaining 26 books were seized by the United States Marshal. On June 3, another certified letter was sent to Meridian and, later, another Notice of Seizure was published.[5]

On June 17, a claim was made by Meridian. On June 26, Meridian answered the Complaint admitting all the allegations except that the books were obscene and contending that the books were wrongfully withheld. Meridian also asserted a counterclaim under the Tucker Act, 28 U.S.C. § 1346(a)(2), for itself and for all others similarly situated alleging that the government was withholding the books for a period greater than that constitutionally permitted under 19 U.S.C. § 1305 as interpreted by the Supreme Court in *United States v. 37 Photographs*, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971). On August 2, Plaintiff-United States filed a motion to dismiss the counterclaim, and on August 9, a motion for summary judgment on the counterclaim. Between July 22 and Sep-

* Honorable Elbert P. Tuttle, Senior Circuit Judge for the Fifth Circuit, sitting by designation.

1. All of the dates herein refer to 1974 except as otherwise designated.

2. Defendants—2,200 books consist of 100 copies each of 22 titles. All of the titles began with the phrase: "What you always wanted to know about . . . " and end with such topics of interest as "sex and nurses," "erotic oralism," "love for hire," "sex in the office," etc. The format of the books are consistent—namely a droll, pseudo-documentary discussion of the topic peppered with references to literary works and provocative case histories. There are photographs distributed every few pages depicting individuals engaged in various stages of diverse forms of sexual activity. Most of the photographs are graphic.

3. The failure of the Marshal to seize the remaining 26 books, which were in the possession of the Office of the United States Attorney, was apparently due to oversight.

4. Rule 1(a) provides as follows:

The notice required by Rule C(4) shall be published at least once and shall contain the fact and date of the arrest, the title of the cause, the nature of the action, the amount demanded, the name of the marshal, the name and address of the attorney for the plaintiff, and a statement that claimants must file their claims pursuant to Rule C(6) with the clerk of this court when the *res* is a vessel within ten days, and when the *res* is other than a vessel within twenty days, after the date of first publication or within such additional time as may be allowed by the court and must serve their answers within twenty days after the filing of their claims. The notice shall also state that all interested persons should file claims and answers within the times so fixed; otherwise, default will be noted and condemnation ordered.

5. The second set of notices was issued because of the failure of the United States Marshal, due to his oversight, to confiscate 26 of the Defendant-Books in his first attempt to seize all of the allegedly obscene material.

tember 17, various interrogatories and requests for admissions were propounded to the United States by Meridian. On August 26, the district court granted the government's motion to dismiss the counterclaim as it found that it lacked jurisdiction and for failure to state a claim upon which relief could be granted.[6] A motion to reconsider the dismissal was denied and trial was set for October 4.

At trial before the district court judge, it was stipulated by counsel for both sides that the Defendants and Claimant waived any objection to the period of time up to and including June 17 (the date on which the Claimant filed its claim below) for purposes of determining whether the sixty-day time requirement of *37 Photographs* had been complied with. The defense moved for judgment on its behalf on the grounds that because (1) the books were not obscene, and (2) because the government had failed to bring the case to judgment within 60 days of June 17, the Claimant was entitled to the return of the books under the holding in *37 Photographs.* As to the obscenity issue, the government merely placed into evidence one copy of each of the 22 titles. No expert witnesses were presented by either side. During the trial, the district court judge informed the government attorney that he had had very limited experience in determining what was pornographic, (little professionally and none personally), so that he could not ascertain the applicable community standards under the test delineated in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) and *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), but that the limited experience he had indicated that the contemporary community standards of Los Angeles "may well tolerate" the material contained in Defendant-Books. Despite the trial judge's comments, the government made no attempt to place in the record any evidence of the applicable standards.

The trial judge found that in the absence of evidence of current contemporary community standards in Los Angeles he could not find the books to be obscene as a matter of law. He also held that because the government had not brought the matter to judgment within 60 days after filing its Complaint for Forfeiture, despite the fact that the Claimant had interposed a counterclaim and discovery machinations, the government had failed to meet the necessary time requirement of *37 Photographs.*

Claimant-Meridian appeals the dismissal of its counterclaim. The government appeals the decision of the trial judge on the obscenity and the time requirement issues. The appeals have been consolidated.

Three issues are presented:

A. Did the district court err in concluding that, because the government failed to produce any evidence of contemporary community standards and because its own limited experience was insufficient for it to ascertain the applicable standard, the Defendant-Books would not, as a matter of law, be found obscene? We hold it did not.

B. Did the district court err in concluding that the government failed in meeting the time requirements established in *37 Photographs?* We hold it did.

C. If the government did fail to meet those time requirements, does a cause of action against the United States arise under the Tucker Act? In view of our answer to the second question, we need not address this issue.

## I. THE TEST OF OBSCENITY

 The test for determining the obscenity of material for purposes of 19 U.S.C. § 1305 (and other federal statutes) is governed by *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) and its progeny. *United States v. 12 200-ft Reels of Film,* 413 U.S. 123, 130 n. 7, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973); *cf. United States v. Cutting,* 538 F.2d 835, 838–839

---

6. The district court accepted the government's argument that the Tucker Act only covered civil actions or claims against the United States for the *taking* of property in violation of the Constitution or acts of Congress and that the Act did not cover claims based on the *withholding* of property for an unconstitutionally long period of time.

n. 3 (9th Cir. 1976), *cert. denied,* 429 U.S. 1052, 97 S.Ct. 766, 50 L.Ed.2d 769 (1977). As stated in *Miller, supra,* 413 U.S. at 24, 93 S.Ct. at 2615:

> The basic guidelines for the trier of fact must be: (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest . . .; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

In applying the test, a judgment on each of the three elements is not to be made on the basis of personal opinion or by the effect of the material on a particularly sensitive or insensitive person or group. *Hamling, supra,* 418 U.S. at 107, 94 S.Ct. 2887; *Miller, supra,* 413 U.S. at 33, 93 S.Ct. 2607; *United States v. Dachsteiner,* 518 F.2d 20, 21 (9th Cir.), *cert. denied,* 421 U.S. 954, 95 S.Ct. 1688, 44 L.Ed.2d 107 (1975). The trier of fact is rather "to draw on his own knowledge of the views of the average person in the community or vicinage from which he comes for making the required determination . . . ." *Hamling, supra,* 418 U.S. at 104, 94 S.Ct. at 2901. The need for expert testimony in obscenity cases is normally not thought to arise as it is assumed that a trier of fact (be it judge or jury) is familiar with the sensitivity of the average person in the community. *Cf. Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 56, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); *Kaplan v. California,* 413 U.S. 115, 121, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973).

The problem arises in this case as the trier of fact (the trial judge) admitted that he was unfamiliar with the current contemporary community standard due to his limited contact with the area both professionally and otherwise. He stated that in his most recent encounter with the issue, the jury found one movie, involving what he considered to be a "patently offensive portrayal of every known sexual act between a man and a woman," not to be obscene; and another movie, involving two lesbians, to be obscene. Given his limited experience and due to the failure of the government to present evidence of the relevant standard (for his consideration of the first element in the three-pronged *Miller* test), the trial judge found as a fact that the contemporary community standards of the geographic area "may well tolerate the depictions of sexual activity contained in Defendant Books."

■ It seems clear that the government bears the burden of proving obscenity to the satisfaction of the trier of fact. *United States v. Obscene Magazines, Film and Cards,* 541 F.2d 810, 811 (9th Cir. 1976). While the Court has stated that "expert" affirmative evidence is not required when the materials are actually placed in evidence, *Paris Adult Theatre I, supra,* 413 U.S. at 56, 93 S.Ct. 2628, it has also stated the questions of what appeals to the "prurient interest" and what is "patently offensive" under Miller's community standards test are "essentially questions of fact." But while the materials themselves "obviously are the best evidence of what they represent," *id.,* (that is whether they depict or describe sexual conduct and the degree of explicitness, *Miller, supra,* 413 U.S. at 24, 93 S.Ct. 2607, 2634), the materials will not supply any information as to the community standards by which they are to be judged. The answer to that "question of fact" must come either from the prior knowledge of the trier of fact, *Smith v. United States,* 431 U.S. 291, 302, 97 S.Ct. 1756, 52 L.Ed.2d 324 (1977), or be supplied by the parties through expert witnesses.[7] Here the trier of fact concluded that the government failed to provide him with suf-

---

7. While it may be said that the trier of fact will know obscenity when he sees it (to paraphrase Justice Stewart's concurrence in *Jacobellis v. Ohio,* 378 U.S. 184, 197, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964), how exactly can an appel-late court determine if he has properly identified the relevant community standards? *See* concurrence in part and dissent in part of Justice Stevens in *Marks v. United States,* 430 U.S. 188, 198, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977).

ficient information as to the relevant community standard upon which he could base a finding of obscenity. That conclusion was not in error.[8]

This issue is very similar to that considered in a recent decision by this court involving the same district court judge and the same forfeiture statute. The language in the majority opinion in *United States v. Obscene Magazines, Film and Cards*, 541 F.2d 810, 811 (9th Cir. 1976) controls our decision here and is quoted at length:

> While the district court might have articulated its reasoning in the language of the cited cases, we interpret the challenged judgments as ultimate findings that the government had failed in its burden of persuasion. The government took the position in each case that the exhibits spoke for themselves and that no evidence of community standards was necessary.
>
> In view of the trial judge's expressed doubt about the community standards of the Los Angeles region, we do not believe that the trial judge's characterization of his decision was one of nonobscenity "as a matter of law" requires another trial. The colloquy tells us that the judge was not persuaded that the exhibits in question were any worse then the photographs found in magazines for sale in various sections of the city and its surrounding communities. Thus his "matter of law" statement could be interpreted as a belief that there was a failure of proof "as a matter of law" even though his choice of "matter of law" nomenclature does appear to be less felicitous than a simple finding of "not proven".
>
> *United States v. Hamling, supra,* supports the proposition that, if the government does rely upon exhibits which meet

the *Miller* test and wins, the defendant is not entitled to a reversal for insufficient evidence. It does not follow, however, that if the government chooses to rest its case upon the exhibits and loses, the trier of fact must be reversed.

Here, it is true that the trier could have found the exhibits obscene under the "patently offensive" test of *Miller v. California, supra,* but he did not do so. Had there been a jury, it could, perhaps, supply its own views of community standards. The judge, a resident of the general area, felt unable to assert with any confidence that, by the standards of the Los Angeles area, the exhibits were sufficiently offensive to require him to declare them contraband. Again, he may have expressed himself badly, but we doubt that upon another trial he would reach a different result.

The cases do not hold that a trier of fact must, as a matter of law, respond at a level of outrage equal to the minimum level that will pass First Amendment muster under *Miller.*

We view these cases as cases in which the government has the burden of convincing the trier of fact. Here the government failed to do so. It is difficult enough for appellate courts to review censorship value judgments after the trier of fact has convicted, without having to review essentially fact-finding decisions after the government has lost.

## II. THE TIME REQUIREMENTS ESTABLISHED IN 37 PHOTOGRAPHS

■ 19 U.S.C. § 1305 itself contains no references to specific time requirements for the institution of judicial proceedings and

---

8. While ordinarily we anticipate that a jury or judge is in a position to determine the community standard even without testimony on that issue, we are presented here with the unique circumstance where a judge was unable to do so. Certainly viewing of movies in court which are alleged to be pornographic and, perhaps, occasional observations of book stores with questionable material will alone form no adequate basis to establish the appropriate standard. Having advised the government of his inability to make the necessary judgment on the community standard, however, it was incumbent on the government to provide evidence on that issue. The government failed to do so and thus did not meet its burden of proof. This is what we interpret the district court to have found, and in this he did not commit error.

for judgment after seizure of alleged obscene materials. However, the Supreme Court on appeal from a finding that the statute was unconstitutional in that it failed to meet the procedural requirements of *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), held in *United States v. 37 Photographs,* 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971), that § 1305 could be construed as requiring administrative and judicial action within specific time limits so as to avoid the constitutional infirmity.

In *37 Photographs,* customs agents seized as obscene photographs possessed by the claimant when he returned to this country from Europe on October 24, 1969. The agents referred the matter to the United States Attorney, who brought forfeiture proceedings on November 6, 1969. Claimant's answer denied that the photographs were obscene and counterclaimed that § 1305(a) was unconstitutional. He asked for a three-judge court which, on November 20, 1969, was ordered to be convened. Following a hearing on the matter, the three-judge court held that § 1305(a) was unconstitutional. The Supreme Court reversed and after balancing the congressional purpose behind § 1305 and the constitutional considerations stated:

". . . we construe § 1305(a) to require intervals of no more than 14 days from seizure of the goods to the institution of judicial proceedings for their forfeiture and no longer than 60 days from the filing of the action to final decision in the district court. *No seizure or forfeiture will be invalidated for delay, however, where the claimant is responsible for extending either administrative action or judicial determination beyond the*

*allowable time limits* or where administrative or judicial proceedings are postponed pending the consideration of constitutional issues appropriate only for a three-judge court." [Emphasis added.] *37 Photographs, supra,* 402 U.S. at 373–374, 91 S.Ct. at 1407.

In this case, the government instituted judicial proceedings within 10 days of the seizure of the materials (except for 26 books) by filing a Complaint for Forfeiture in the district court on March 28, 1974. The Claimant failed to respond to the initial notices (the certified letter and the publication in the Daily Journal) of the seizure and institution of judicial proceedings. The Claimant did respond to the second set of notices on June 17 when it submitted a claim for the materials. However, by that time more than 60 days had passed from the institution of legal proceedings. Nine days after submitting its claim, the Claimant filed an answer and counterclaim, the latter being in the form of a purported class action. The trial judge dismissed the counterclaim on the ground that the court lacked jurisdiction, inasmuch as the Tucker Act did not cover the alleged nonfeasance by the government in failing to bring the case to judgment sooner.[9]

Initially, it must be determined what constitutes a "delay . . . where the claimant is responsible for extending either administrative action or judicial determination beyond the allowable time limits." *Id.,* p. 374, 91 S.Ct. at 1407. Aside from *37 Photographs,* no cases are cited to this court by the parties and, after independent research, no other cases have been located which discuss this element.[10] *But see United States v. One Carton Positive Motion*

---

**9.** After the trial on the obscenity issue, the trial judge did conclude that the government had failed to bring the case to judgment within the time requirement of *37 Photographs.* However, at the time of the dismissal of the counterclaim, no such finding had been reached.

**10.** Two cases were found wherein it was held that the claimant's actions, which delayed the institution of judicial proceedings, was sufficient to extend the time in which the government was required to commence such proceed-

ings. In *Ivers v. United States,* 413 F.Supp. 394 (N.D.Cal.1975), the claimant had employed administrative petitions to avoid or mitigate forfeiture which had in turn delayed the referral of the case to the United States Attorney. The claimant had also requested an extension, substituted attorneys and amended his petition for relief. In *United States v. One 1973 Ford LTD,* 409 F.Supp. 741 (D.Nev.1976), the claimant had likewise sought administrative redress which was held to be the source of the delay.

*Picture Film*, 367 F.2d 889, 904 (2d Cir. 1966), a pre-*37 Photographs* decision which supports our decision herein.

Here, the delay between the filing of the complaint by the government and the judgment by the trial court was not triggered by any action of the government. The initial delay between May 1 and June 17 was due to the failure of the Claimant to respond to the government's complaint. Thereafter, more delay was incurred because the Claimant sought to resist the forfeiture by filing a counterclaim and by engaging in discovery and other legal maneuvers. While the trial judge in determining the issue of the return of the material held that the responsibility for the delay fell upon the government "since the Counterclaim could have been severed and tried separately, and since trial of this action could have been held at any time within seven days of Plaintiff's request," that conclusion is inconsistent with the language of *37 Photographs* that the Claimant must bear the burden of the delay which he causes. The government was not obligated to mitigate the actions of the Claimant which produced delay. In this case, the government acted diligently and in good faith throughout. It was not required to go further and to analyze the legal maneuvers of the Claimant in terms of their effect upon the 60-day time period established in *37 Photographs*. If the Claimant had really desired to have the matter expedited, it should have made the appropriate motions to have the counterclaim severed and tried separately.

### III. JURISDICTION UNDER THE TUCKER ACT

This issue need not be considered as we have held that the government did not fail to meet the time requirements established in *37 Photographs*.

### CONCLUSION.

The dismissal of the Claimant's counterclaim was correct although not for the reasons relied upon by the district court. The decision on the obscenity issue is affirmed for the reasons stated herein.