UNITED STATES of America,

v.

Robert BROWN, a/k/a Bob Brown.
Crim. A. No. 111–70–N.

United States District Court,
E. D. Virginia,
Norfolk Division.
June 9, 1971.

John A. Field, III, Asst. U. S. Atty., Norfolk, Va., Larry E. Butcher, Donald H. Feige, Attys., Dept. of Justice, Washington, D. C., for plaintiff.

Stanley M. Dietz, Washington, D. C., James B. Power, Norfolk, Va., for defendant.

## OPINION AND JUDGMENT ORDER

KELLAM, District Judge.

On July 14, 1970, the grand jury returned a one-count indictment charging Robert Brown with a violation of 18 U.S.C. § 1462. Specifically, the indictment alleges that Brown knowingly used the Railway Express Agency for transporting copies of two obscene books in interstate commerce from New York to Norfolk, Virginia. At his arraignment on October 26, 1970, Brown entered a plea of not guilty. On February 9, 1971, Brown waived a jury trial and moved to dismiss the indictment, claiming that 18 U.S.C. § 1462 is unconstitutional. By an Order dated February 17, 1971, this

Court postponed determination of the constitutional question until after presentation of the evidence so that all the issues could be briefed and decided together. The case was tried before the Court on March 18, 1971; at the conclusion of the government's case-in-chief and after presentation of all the evidence, Brown moved for a judgment of acquittal pursuant to Fed.R.Crim.P. 29.

## I

The two books named in the indictment, "My Last Time Never Again" and "Boys Who Seduce Other Boys," are essentially the same. Each consists of about a hundred pages of text and photographs. The text consists of several short "stories," seven in each book, explicitly describing various homosexual activities, including fellatio and sodomy, between men and boys. The photographs generally show one or two boys completely nude, with their genitals exposed. While the photographs do not illustrate the homosexual activity so graphically described in the text, many of them show the figures in close contact, occasionally with their genitals touching.

█ The evidence is not in conflict in any material way. The principally contested factual issue is whether the two books are actually obscene. The statute under which Brown was indicted, 18 U.S.C. § 1462, prohibits the use of any express company or other common carrier for carriage in interstate commerce of "any obscene, lewd, lascivious, or filthy book, pamphlet, picture * * * or other matter of indecent character." [1] To sustain a conviction under this section, there must be proof that Brown knowingly used some means of interstate commerce for the transportation and delivery of obscene materials.

### a.

█ While the government has the burden of proving that Brown had knowledge of the character of these particular materials, Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959), Brown's belief that the books would or would not be characterized as obscene is immaterial. See Kahm v. United States, 300 F.2d 78 (5th Cir. 1962). Evidence of Brown's knowledge of the nature of these two books came from his business associate, Manny Balsky. Balsky manages Manny's Bargain Books, an "adult" book store in Norfolk, but Brown is president of the corporation through which they operate. Brown is also president of the Overstock Book Co. (Brown Book Co.) in New York. Overstock is in the business of publishing and wholesaling. According to an arrangement, Brown selects the books and other materials in New York and sends them to Balsky for resale in Norfolk.[2] Balsky stated that all of his "adult" books came from Overstock and that Brown selected the books to be shipped. Also, Balsky testified that the books he received from Brown were shipped by Railway Express. Brown was, and still is, engaged in the commercial exploitation of this kind of material. The conduct of Brown's business as revealed by Balsky's testimony and Overstock's invoice with its attached list of the materials sent sufficiently show that Brown knew exactly what these materials were. That he believed the books would be constitutionally protected, however, is no defense.

### b.

Brown does not challenge the government's proof that he shipped the books in interstate commerce. Balsky testified

---

1. The constitutionality of 18 U.S.C. § 1462 will be discussed *infra* at II.

2. In the store they are separated from other books; are restricted as "Girlie" and "Men" magazines, and Balsky tries to keep them from view of ladies and children. No one can intentionally avoid knowledge by closing his eyes to facts

which should prompt him to investigate. *See* Griego v. U. S., 298 F.2d 845, 849 (10th Cir. 1962); U. S. v. Erie R. R. Co., 222 F. 444, 450 (3d Cir.); U. S. v. Gen. Motors, 226 F.2d 745, 749 (3d Cir.); U. S. v. Bletterman, 279 F.2d 320, 322 (2d Cir. 1960); Beck v. U. S., 305 F.2d 595, 599 (10th Cir. 1962).

that he dealt exclusively with Bob Brown of Overstock Book Co. and that when FBI Agent Flanders seized these two books, all the "adult" books in his store came from Brown in New York via Railway Express. The invoice shows that the books were shipped by Overstock Book Co. (Brown Book Co.) in New York for delivery to Manny's Bargain Books in Norfolk. The package slip attached to the invoice shows that the shipping carton contained nine copies of "My Last Time Never Again" and ten copies of "Boys Who Seduce Other Boys." Clearly, this element of the offense has been proved.

### c.

█ The real issue in this case, of course, is whether these two books are actually obscene. The Supreme Court has held, more than once, that obscenity is outside the scope of First Amendment protection. *E. g.* United States v. Reidel, 402 U.S. 351, 91 S.Ct. 1410, 28 L.Ed.2d 813 (May 3, 1971). The Supreme Court set out the test for determining obscenity in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), but the test was modified in A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Massachusetts, (Fanny Hill), 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed. 2d 1 (1966). The *Roth-Fanny Hill* test contains three elements: (1) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (2) the material is patently offensive because it affronts contemporary community standards relating to the description and representation of sexual matters; and (3) the material is utterly without redeeming social value.

█ Brown argues that this Court must acquit him because the government presented no expert testimony that the two books are obscene. As authority for this position, Brown relies on United States v. Klaw, 350 F.2d 155 (2d Cir. 1965), which does indicate some of the problems involved in determining questions of prurient interest and contemporary community standards. Specifi-

cally, the problems include "how," "by whom," and "on what basis" these determinations are to be made. *Klaw,* however, is not controlling here, for as the Second Circuit Court of Appeals subsequently pointed out, the particular facts in *Klaw* required such testimony. United States v. Wild, 422 F.2d 34 (2d Cir. 1969). The two books named in this indictment appear to be substantially different from the materials discussed in *Klaw.* These books, while the photographs are somewhat less offensive than the color slides involved in *Wild,* give graphic textual descriptions of the same homosexual activities illustrated on the slides in *Wild.* Judge Lumbard stated in *Wild,* "The question of obscenity can be disposed of merely by stating that these slides are unquestionably hard core pornography. * * * There is no conceivable claim that these color slides have redeeming social value. * * * [H]ard core pornography such as this can and does speak for itself." 422 F.2d at 35–36. And in Ginzburg v. United States, 383 U.S. 463, 465, 86 S.Ct. 942, 944, 16 L.Ed. 2d 31, the Court said that in the cases in which it had "decided obscenity questions since *Roth,* it has regarded the materials as sufficient in themselves for the determination of the question." Clearly, these two books constitute hard core pornography and, therefore, are outside the limits of constitutional protection. In his concurring opinion in Jacobellis v. Ohio, 378 U.S. 184, 197, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964), Mr. Justice Stewart, speaking of hard core pornography, stated "I know it when I see it." Surely, these two books fall within that category. There is no need that experts be called to testify that these two books are obscene.

█ Despite the character of the text, Brown claims that these books do have some redeeming social value. To prove this assertion, Brown offered the testimony of Dr. Wilbur Hamman, a psychiatrist at St. Elizabeth's Hospital in Washington. Dr. Hamman stated his opinion that the two books would not appeal to the "prurient interest of the

relatively normal American" although they might appeal to some homosexuals and pedophiles.[3] When asked if there was "any theme" in either book, Dr. Hamman, referring to "My Last Time Never Again," stated that "the theme, in general, is that homosexuals are pretty messed up and sick people and you ought to stay away from them or you're going to get in trouble." Speaking of the other book, "Boys Who Seduce Other Boys," Dr. Hamman stated, "what it showed to me was a number of very messed up people getting involved with each other, but I don't think the theme came through as clearly as it did in the first book." [4] The "theme" of which Dr. Hamman speaks is so disguised among the graphic descriptions of homosexual activities that if such a "theme" does indeed exist it is hardly discernable. The term "theme" is an over-statement at best, and the purported "message" certainly is not "dominant." The few sentences at the end of some of the stories, where one of the parties expresses remorse over his situation which resulted from involvement with homosexuals, do not add any redeeming social value as Brown claims.

Referring to the photographs in the two books, Dr. Hamman stated that they would appeal to some homosexuals and pedophiles, but not necessarily any more than a Sears & Roebuck catalogue. Likewise, Dr. Hamman indicated that these books were no more revolting than a television commercial showing a man brushing his teeth. The realm of psychiatry is indeed highly technical and beyond the understanding of laymen, but these conclusions seem absurd. It goes without saying that the difference between a Sears & Roebuck catalogue or a toothpaste advertisement and these two books is almost immeasurable. Unquestionably the descriptions in these books far exceed the limits of candor required

to explain the detrimental aspects of homosexuality.

Brown also offered the testimony of Raymond Pechin, the national sales manager of Potomac News Company, in an attempt to establish the nationwide distribution of books and magazines comparable to "My Last Time Never Again" and "Boys Who Seduce Other Boys." Pechin is in a position to know this fact since his company is a large distributor of materials for "adult" bookstores. This national distribution ranged up to 80,000 copies for magazines containing photographs depicting the same sexual activities described in these two books. Pechin did admit, however, that the distribution of these "adult" materials was rather small in comparison with other publications. Pechin also agreed that these books would be "patently offensive" to "the vast majority of the American populace."

■ This Court has also considered the other materials presented as exhibits. Testimony indicated that many of these books are available at "adult" bookstores in Norfolk. Counsel's point, apparently, is that the same kinds of materials, or worse, are widely sold in this area but go unprosecuted by law enforcement authorities. Whether or not these "comparison" materials are obscene is immaterial; however, all of them can be distinguished in one way or another from the two books named in this indictment. The first group of pamphlets consists of photographs only. While the photographs in some of the books may be more suggestive than the photographs in the subject books, there is no text, and the text is mainly what makes "My Last Time Never Again" and "Boys Who Seduce Other Boys" so patently offensive. Some of the books contain photographs which graphically illustrate various homosexual and heterosexual

---

3. Dr. Hamman described the writing as "revolting" and as "shocking writing," but he did not have an opinion as to whom it would appeal.

4. In "Boys Who Seduce Other Boys" one of the stories tells of how the two boys are now living together and enjoying themselves, and another tells of how one of the boys is still in love with the other boy. Is this redeeming social value?

activity, and in this respect the books are more offensive than what we are dealing with here. However, the texts in these books might arguably have some "redeeming social value" in that they purport to be psychiatric or historical examinations, with some "case studies," of the particular subject involved. Basically these texts may be said to be sex education manuals and in this respect are significantly different from the descriptions in "My Last Time Never Again" and "Boys Who Seduce Other Boys." *See* United States v. Gower, 316 F.Supp. 1390, 1395 (D.D.C.1970).

Despite Brown's contentions to the contrary, the dominant theme of these two books, taken as a whole, appeals to a prurient interest in sex, the books are patently offensive because they affront contemporary standards relating to the description or representation of sexual matters, and both books are utterly without redeeming social value. United States v. Wild, *supra;* United States v. Gower, *supra.* All three elements coalesce in these two books.

## II

■ Brown also contends that the statute under which he was indicted, 18 U.S.C. § 1462, is unconstitutional. Brown's argument is that consonant with an individual's right to possess obscene materials in his home, Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), "there must be a correlative right for that individual to acquire the literary material to be enjoyed in the privacy of his home, regardless of the literary merit or redeeming social value of the material." This claim, however, has recently been rejected by the Supreme Court.

In Gable v. Jenkins, 397 U.S. 592, 90 S.Ct. 1351, 25 L.Ed.2d 595 (1970), the Supreme Court affirmed the decision of a three judge district court, 309 F.Supp. 998 (N.D.Ga.1969), holding that Stanley v. Georgia did not invalidate a Georgia statute prohibiting the distribution of obscene materials.

Two more recent decisions, United States v. Thirty-Seven Photographs, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (May 3, 1971) and United States v. Reidel, 402 U.S. 351, 91 S.Ct. 1410, 28 L.Ed.2d 813 (May 3, 1971), effectively foreclose any question of governmental power to control the distribution of obscene matter. In *Thirty-Seven Photographs,* the Supreme Court held that there is no constitutional impediment to a federal statute, 19 U.S.C. § 1305(a), prohibiting the importation of obscene materials for private use or public distribution. In *Reidel,* the Court held that 18 U.S.C. § 1461, which prohibits the knowing use of the mails for the delivery of obscene matter, is constitutional as applied to willing recipients who state that they are adults. Each of these cases involved the commercial exploitation of obscenity, and the Court distinguished these situations from that in Stanley v. Georgia, *supra,* where the Court recognized that the private possession of obscene materials is constitutionally protected. There is no reason why commercial distribution under 18 U.S.C. § 1462 should be treated otherwise. Speaking of this commercialism in *Thirty-Seven Photographs,* the Court stated,

> Whatever the scope of the right to receive obscenity adumbrated in *Stanley,* that right, as we said in *Reidel,* does not extend to one who is seeking, as was Luros here, to distribute obscene materials to the public, nor does it extend to one seeking to import obscene materials from abroad, whether for private use or public distribution.

And continuing, the Court said of such material,

> Congress may declare it contraband and prohibit the importation.

Further, the Court said,

> Obscene materials may be removed from the channels of commerce when discovered in the luggage of a returning foreign traveler even though intended solely for his private use.

*Reidel* speaks to the same effect; there the Court stated that the language of Stanley v. Georgia, focusing on "freedom of mind and thought and on the privacy of one's home * * * does not require that we fashion or recognize a constitutional right in people like Reidel to distribute or sell obscene materials." In both these cases, the Court recognized a clear distinction between dealers in pornography, like Luros and Reidel, and the private user like Stanley. In both cases, the Court ruled that federal statutes controlling the delivery of obscene matter are constitutional when applied to persons doing business in obscenity. We see no reason why the Supreme Court would reach a different result in a similar case prosecuted under 18 U.S.C. § 1462.

Robert Brown, like Milton Luros and Norman Reidel, is in the business of selling and distributing obscene matter. Clearly, 18 U.S.C. § 1462, which prohibits the knowing use of an express company or other common carrier for carrying obscene materials in interstate commerce, is constitutional when applied to Robert Brown and the facts of this case. See Miller v. United States, 431 F.2d 655 (9th Cir. 1970); United States v. Fragus, 428 F.2d 1211 (5th Cir. 1970); United States v. Melvin, 419 F.2d 136 (4th Cir. 1969).

Having determined that 18 U.S.C. § 1462 is constitutional as applied to the facts of this case, that "My Last Time Never Again" and "Boys Who Seduce Other Boys" constitute hard core pornography and are obscene, that Robert Brown caused these books to be shipped in interstate commerce, and that Brown knew of the character of these books, Brown's motion for a judgment of acquittal must be denied. The evidence establishes beyond a reasonable doubt that Robert Brown violated 18 U.S.C. § 1462. Accordingly, Brown is found guilty and a judgment of conviction is entered. Counsel will arrange an agreeable' time for defendant to appear for sentencing. If counsel for defendant desires the Court to order a presentence report, he shall within five days so advise the Court and arrange for defendant to report to the probation officer of this Court. Counsel will advise defendant of his right to refuse to answer any questions relative to the facts of the charge.