Bruce Wayne FORD, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 3–1276A303.

Court of Appeals of Indiana, Third District.

Sept. 27, 1979.

Rehearing Denied Nov. 30, 1979.

Leonard V. Campanale, Mishawaka, for appellant.

Theo. L. Sendak, Atty. Gen., Charles D. Rogers, Deputy Atty. Gen., Indianapolis, for appellee.

HOFFMAN, Judge.

Defendant-appellant Bruce Wayne Ford was adjudged guilty of distributing obscene matter[1] and fined $10,000. His appeal specifies these issues for review:

(1) whether the trial court erred in denying his motion to dismiss;

(2) whether there was sufficient evidence that the magazine was obscene;

(3) whether the Indiana obscenity statute is unconstitutional; and

---

1. IC 1971, 35–30–10.1–2 (Burns Code Ed.) provides:

"Every person (1) who knowingly sends, causes to be sent, brings or causes to be brought into this state obscene matter for sale or distribution, or (2) who knowingly offers to distribute, distributes, or exhibits to another any obscene matter, is guilty of a misdemeanor."

(4) whether the fine was excessive.

The facts surrounding this appeal are not in dispute. On October 16, 1975, Officer Charles Culp purchased a magazine entitled "Juicy Fuck" from Ford at the Pleasureland Museum in Mishawaka, Indiana. The magazine depicted various men and women performing acts of sexual intercourse, cunnilingus, and fellatio.

■ Defendant's first assertion of error is that the trial court erred in denying his motion to dismiss. The State, on the other hand, contends that this issue is waived because defendant's motion to correct errors filed to comply with Ind. Rules of Procedure, Trial Rule 59(B). That rule provides in part:

". . . The statement of claimed errors shall be specific rather than general, and shall be accompanied by a statement of the facts and grounds upon which the errors are based."

Ford's motion to correct errors merely recited that "[e]rror was committed in the denial of defendant's Motion to Dismiss on March 5, 1976." An examination of his motion to dismiss reveals six separate allegations of error. Thus, defendant has neglected to specify which of the grounds he is relying upon as error for purposes of this appeal. Consequently, the trial judge being unapprised of specific alleged errors could not reasonably have done anything other than deny this portion of the motion to correct errors.

■ Ford next maintains that the verdict of the jury was not supported by sufficient evidence because the State failed to prove that the magazine in question was obscene. The basis for this alleged error is that the State did not present any evidence that the average person applying contemporary community standards would find the dominant theme of the magazine appealed to the prurient interest in sex or that the magazine lacked serious literary, artistic, political, or scientific value. Ford argues at length that his expert witnesses established that the magazine did not appeal to a prurient interest in sex, that it was not patent-ly offensive, and that it contained serious literary, artistic, political or scientific value.

At trial the prosecution tendered the magazine itself into evidence. This act alone was sufficient evidence for the jury to determine the magazine's obscenity. In *Paris Adult Theatre I v. Slaton* (1973), 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446, the United States Supreme Court held:

"Nor was it error to fail to require 'expert' affirmative evidence that the materials were obscene when the materials themselves were actually placed in evidence. *United States v. Groner*, 479 F.2d 577, 579–586 (CA5 1973); *id.*, at 586–588 (Ainsworth, J., concurring); *id.*, at 588–589 (Clark, J., concurring); *United States v. Wild*, 422 F.2d 34, 35–36 (CA2 1969), cert. denied, 402 U.S. 986 [91 S.Ct. 1644, 29 L.Ed.2d 152] (1971); *Kahn v. United States*, 300 F.2d 78, 84 (C.A. 5), cert. denied, 369 U.S. 859 [82 S.Ct. 949, 8 L.Ed.2d 18] (1962); *State v. Amato*, 49 Wis.2d 638, 645, 183 N.W.2d 29, 32 (1971), cert. denied *sub nom. Amato v. Wisconsin*, 404 U.S. 1063 [92 S.Ct. 735, 30 L.Ed.2d 751] (1972). See *Smith v. California*, 361 U.S. 147, 172 [80 S.Ct. 215, 228, 4 L.Ed.2d 205] (1959) (Harlan, J., concurring and dissenting); *United States v. Brown*, 328 F.Supp. 196, 199 (ED Va. 1971). The films, obviously, are the best evidence of what they represent. 'In the cases in which this Court has decided obscenity question since *Roth*, it has regarded the materials as sufficient in themselves for the determination of the question.' *Ginzburg v. United States*, 383 U.S. 463, 465 [86 S.Ct. 942, 944, 16 L.Ed.2d 31] (1966)." (Footnote omitted.) 413 U.S. at 56, 93 S.Ct. at 2634, 2635.

The court noted that obscenity is not a subject that lends itself to the traditional use of expert testimony since such testimony is usually admitted for the purpose of explaining to lay jurors what they otherwise could not understand. "Simply stated, hard core pornography . . . can and does speak for itself." *United States v. Wild* (2d Cir. 1969) 422 F.2d 34, 36.

Next, defendant assails the constitutionality of the Indiana obscenity statute, IC 1971, 35–30–10.1–1, on First Amendment grounds. The first prong of this attack is premised on the erroneous assumption that all sexual expression is constitutionally protected. It is well established that obscenity is not within the area of constitutionally protected speech or press. *Roth v. United States* (1957), 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498; *Miller v. California* (1973), 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419; *Paris Adult Theatre I v. Slaton, supra*; *Kaplan v. California* (1973), 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492.

Secondly, defendant insists that the statute is vague and overly broad since it does not provide adequate notice of what acts are prohibited. The upshot of this assertion is that the language of the statute is not sufficiently precise because the words do not mean the same thing to all people in every instance.

A criminal statute is vague when it fails to inform persons of ordinary intelligence what their conduct must be in order for them to be guilty of a violation thereof. *Platt v. State* (1976), Ind.App., 341 N.E.2d 219. The criteria for determining what constitutes obscene material subject to state regulation was delineated in *Miller v. California, supra*, where it was held that appraisal of the nature of the matter by "contemporary community standards" was an adequate basis for establishing obscenity.

"The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, *Kois v. Wisconsin, supra*, [408 U.S.] at 230 [92 S.Ct., at 2246], quoting *Roth v. United States, supra*, [354 U.S.] at 489 [77 S.Ct., at 1311]; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. We do not adopt as a constitutional standard the 'ut-

terly without redeeming social value' test of *Memoirs v. Massachusetts*, 383 U.S., at 419 [86 S.Ct., at 977]; that concept has never commanded the adherence of more than three Justices at one time. See *supra*, at 21. If a state law that regulates obscene material is thus limited, as written or construed, the First Amendment values applicable to the States through the Fourteenth Amendment are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary. See *Kois v. Wisconsin, supra*, [408 U.S.] at 232 [92 S.Ct., at 2247]; *Memoirs v. Massachusetts, supra*, [383 U.S.] at 459–460 [86 S.Ct., at 998] (Harlan, J., dissenting); *Jacobellis v. Ohio*, 378 U.S., at 204 [84 S.Ct., at 1686] (Harlan, J., dissenting); *New York Times Co. v. Sullivan*, 376 U.S. 254, 284–285 [84 S.Ct. 710, 728, 11 L.Ed.2d 686] (1964); *Roth v. United States, supra*, [354 U.S.] at 497–498 [77 S.Ct., at 1315–1316] (Harlan, J., concurring and dissenting.)" (Footnote omitted.)

413 U.S. at 24–25, 93 S.Ct. at 2615.

The Indiana statute is written in the form prescribed by *Miller*. Indeed, the language of the statute mirrors the holding in that case. Defendant has not demonstrated an infringement upon any First Amendment guarantees.

As a corollary to his void-for-vagueness assault, Ford claims that the statute violates the constitutional requirements of due process.

In *Roth v. United States, supra*, the Supreme Court was confronted with a similar argument. There the statutes under attack punished the sale, advertising, or mailing of obscene material.

"Many decisions have recognized that these terms of obscenity statutes are not precise. This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. '. . . [T]he Constitution does not require impossible standards'; all that is required is that the language 'conveys sufficiently definite

warning as to the proscribed conduct when measured by common understanding and practices . . . .' *United States v. Petrillo*, 332 U.S. 1, 7–8 [67 S.Ct. 1538, 1542, 91 L.Ed. 1877]. These words, applied according to the proper standard for judging obscenity, already discussed, give adequate warning of the conduct proscribed and mark '. . . boundaries sufficiently distinct for judges and juries fairly to administer the law . . . . That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense . . . .' *Id.*, 332 U.S. at page 7, 67 S.Ct. at page 1542. See also *United States v. Harriss*, 347 U.S. 612, 624, n. 15 [74 S.Ct. 808, 815, 98 L.Ed. 989]; *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 340 [72 S.Ct. 329, 330, 96 L.Ed. 367]; *United States v. Ragen*, 314 U.S. 513, 523–524 [62 S.Ct. 374, 378, 86 L.Ed. 383]; *United States v. Wurzbach*, 280 U.S. 396 [50 S.Ct. 167, 74 L.Ed. 508]; *Hygrade Provision Co. v. Sherman*, 266 U.S. 497 [45 S.Ct. 141, 69 L.Ed. 402]; *Fox v. State of Washington*, 236 U.S. 273 [35 S.Ct. 383, 59 L.Ed. 573]; *Nash v. United States*, 229 U.S. 373 [33 S.Ct. 780, 57 L.Ed. 1232].

"In summary, then, we hold that these statutes, applied according to the proper standard for judging obscenity, do not offend constitutional safeguards against convictions based upon protected material, or fail to give men in acting adequate notice of what is prohibited." (Footnotes omitted.)

354 U.S. at 491–492, 77 S.Ct. at 1313.

See also : *Hamling v. United States* (1974), 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590; *United States v. Reidel* (1971), 402 U.S. 351, 91 S.Ct. 1410, 28 L.Ed. 813.

The legal definition of obscenity in the Indiana statute does not change with each indictment. It is a term sufficiently specific to provide adequate notice of proscribed conduct.

Defendant also complains that since the statute punishes the distribution of sexually oriented material to consenting adults, it is an unconstitutional invasion into the right of privacy. Even assuming that defendant has not exposed any minors or unconsenting adults to such matter, this fact does not preclude a prosecution for violating a law proscribing the sale or distribution of obscene materials. As noted in *Kaplan v. California, supra* :

"States need not wait until behavioral experts or educators can provide empirical data before enacting controls of commerce in obscene materials unprotected by the First Amendment or by a constitutional right to privacy. We have noted the power of a legislative body to enact such regulatory laws on the basis of unprovable assumptions. See *Paris Adult Theatre I v. Slaton* [*supra*, 413 U.S.] at 60–63 [93 S.Ct., at 2636–2638].

"[7] Prior to trial, petitioner moved to dismiss the complaint on the basis that sale of sexually oriented material to consenting adults is constitutionally protected. In connection with this motion only, the prosecution stipulated that it did not claim that petitioner either disseminated any material to minors or thrust it upon the general public. The trial court denied the motion. Today, this Court, in *Paris Adult Theatre I v. Slaton* [*supra*, 413 U.S.] at 68–69 [93 S.Ct., at 2641–2642], reaffirms that commercial exposure and sale of obscene materials to anyone, including consenting adults, is subject to state regulation. See also *United States v. Orito* [413 U.S. 139] at 141–144 [93 S.Ct. 2674, at 2677–2679, 37 L.Ed.2d 513]; *United States v. 12 200-ft. Reels of Super 8 mm. Film*, [413 U.S. 123] at 128 [93 S.Ct. 2665, at 2669, 37 L.Ed.2d 500]; *United States v. Thirty-Seven Photographs*, 402 U.S. 363, 376 [91 S.Ct. 1400, 28 L.Ed.2d 822] (1971) (opinion of White, J.); *United States v. Reidel*, 402 U.S. 351, 355–356 [91 S.Ct. 1410, 1412, 28 L.Ed.2d 813] (1971). The denial of petitioner's motion was, therefore, not error."

413 U.S. at 120–121, 93 S.Ct. at 2684–2685.

Defendant further argues that since *Stanley v. Georgia* (1969), 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542, recognized a constitutional right to possess obscene materials in the privacy of the home, then it must follow that the state may not punish a person who provides such matter to consenting adults. However, this view was specifically rejected in *United States v. Orito* (1973), 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513:

> "The District Court erred in striking down 18 U.S.C. § 1462 and dismissing appellee's indictment on these 'privacy' grounds. The essence of appellee's contentions is that *Stanley* has firmly established the right to possess obscene material in the privacy of the home and that this creates a correlative right to receive it, transport it, or distribute it. We have rejected that reasoning. This case was decided by the District Court before our decisions in *United States v. Thirty-Seven Photographs,* 402 U.S. 363 [91 S.Ct. 1400, 28 L.Ed.2d 822] (1971), and *United States v. Reidel,* 402 U.S. 351 [91 S.Ct. 1410, 28 L.Ed.2d 813] (1971). Those holdings negate the idea that some zone of constitutionally protected privacy follows such material when it is moved outside the home area protected by *Stanley*. *United States v. Thirty-Seven Photographs, supra,* [402 U.S.] at 376 [91 S.Ct., at 1408] (opinion of White, J.). *United States v. Reidel, supra,* [402 U.S.] at 354–356 [91 S.Ct., at 1411–1412]. See *United States v. Zacher,* 332 F.Supp. 883, 885–886 (ED Wis.1971). But cf. *United States v. Thirty-Seven Photographs, supra,* [402 U.S.] at 379 [91 S.Ct., at 1409] (Stewart, J., concurring)." (Footnote omitted.)

413 U.S. at 141–142, 93 S.Ct. at 2677.

Defendant's final constitutional assault on the obscenity statute is that it violates the Equal Protection Clause of the Fourteenth Amendment. Ford alleges that there is no rational basis for the exemptions from prosecution provided in the statute. IC 1971, 35–30–10.1–4(b) (Burns Code Ed.) reads:

> ". . . The following are exempt from prosecution under this chapter:

schools with a full time faculty and diversified curriculum; churches affiliated with a national or regional denomination; museums, medical clinics of licensed physicians or psychiatrists; hospitals; licensed physicians or psychiatrists; public libraries; governmental agencies, other organizations who are income tax exempt, are supported in part or in whole by tax funds, or receive at least one-third (⅓) of their support from publicly-donated funds; and persons acting the capacity as employees or agents of any of the above."

■ At the outset, it is necessary to determine the appropriate standard of review for this equal protection challenge. Equal protection analysis requires strict scrutiny of legislative classification when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class. When fundamental rights or a suspect class are involved, the classification must be subjected to close judicial inquiry and must be justified by a compelling state interest.

■ The statute here involves neither a suspect class nor a fundamental right. Uncertain as other matters with regard to obscenity may be, the Supreme Court has categorically settled that obscene material is unprotected by the First Amendment. *Miller v. California, supra.*

Thus, the traditional reasonable basis test is applicable. This test requires that legislative creation of a special class must be based upon a distinction separating that class from others, and the distinction must rest on some ground of difference having a fair and substantial relationship to the object of the legislation so that all persons similarly circumstanced shall be treated alike. *Geyer v. City of Logansport* (1977), Ind., 370 N.E.2d 333.

■ The burden upon one who challenges a statute is a heavy one:

> "Under the traditional equal protection test, the challenger must present a case

which is sufficient to overcome the general presumption of constitutionality. The same party must present the court with the legal and factual means to determine whether the statutory scheme involving a classification is related to the purpose of the act. The party must put before the court a statement of the purpose and objective of the act for which it contends. The party must identify for the court the statutory characteristics which serve to differentiate the classes. And it must show that there is no rational basis for dissimilarly treating classes having only those differences. This burden may be carried by demonstrating the identity of interest of the two classes which inheres in the subject matter of the legislation."

*Bd. Comm'rs v. Kokomo City Plan Comm.* (1975), 263 Ind. 282, at 290, 330 N.E.2d 92, at 98. Ford has not met this burden. He has failed to demonstrate that no rational basis exists for the different treatment and has not shown any identity of interest between the exempt class and the non-exemptions.

Notwithstanding Ford's inability to carry his burden of proof, it will be noted that there is a rational basis for the exemptions. The state has a legitimate interest in regulating the commercial exploitation of obscene material. This includes the interest of the public in the quality of life and the total community environment, the tone of commerce, and possibly the public safety itself. A scheme of regulation designed to control the commercial exploitation of obscenity in order to enhance the general welfare is not arbitrary because it distinguishes between a forum where the purpose of the display of obscenity is primarily commercial in nature and a forum where the display is linked to the exchange of ideas and free expression. See *Gabriel v. Town of Old Orchard Beach* (1978), Me., 390 A.2d 1065 where it was held that a rational basis exists for permitting displays of nudity in a theatrical environment while prohibiting such displays in bars or taverns.

Moreover, the exemptions for organizations supported in whole or in part by publicly donated funds and those which are tax exempt also advances this legitimate state interest. Since these organizations are subject to strict regulation in regard to their purposes, this minimizes the danger that these groups may exploit obscenity for profit.

Lastly, defendant urges that the $10,000 fine imposed on him by the jury is excessive insofar as he was not an employee of the bookstore where the magazine was sold but was simply watching the store in the owner's absence. Apparently this argument is predicated upon Article 1, § 16 of the Indiana Constitution which provides in part: "All penalties shall be proportioned to the nature of the offense."

This constitutional provision is a limitation on the acts of the General Assembly and is not a limitation on the discretion of a jury acting within the framework of the statute. Where the penalty assessed is within the statute governing the offense charged, a reviewing court may not interfere with that decision even though the fine may appear severe. *Gingerich v. State* (1948), 226 Ind. 678, 83 N.E.2d 47. Since the statute under which defendant was charged is constitutional, then the punishment, being within the limits as fixed, is lawful and not contrary to § 16 of Article 1. *Blue v. State* (1946), 224 Ind. 394, 67 N.E.2d 377.

Finding no basis for reversal, the judgment of the trial court must be affirmed.

Affirmed.

STATON, J., concurs.

GARRARD, P. J., dissents with opinion.

GARRARD, Presiding Judge, dissenting.

Obscenity cases generate highly emotional public reactions. Acts of censorship evoke grave concern among people devoted to a viable democratic society. While these problems underlie our problem today, they are only tangentially involved in the question we must decide. It has been clearly decided that obscene material is not protected by the free speech guarantees of the First Amendment. *Miller v. California*

(1973), 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419. However, despite numerous efforts, precision in the yardstick of definition has eluded us. Our courts have recognized that while "obscenity" is limited to representations or descriptions of certain forms of sexual conduct, the conclusion that a particular piece of material is obscene varies in the context in which the sexual expression appears and may also vary with the time and place in which it is considered. *Miller, supra.* With these determinations I voice no quarrel.

What we are asked to do today is affirm a criminal conviction of the appellant Ford for distributing obscene materials. Upon that conviction he was fined ten thousand dollars ($10,000).[1] The statute under which he was prosecuted tracks the language of the majority in *Miller.* I agree that it provides a constitutionally permissible basis for deciding that material is obscene in the face of a free speech challenge.[2]

I have personally cherished the notion that before our government could successfully prosecute a citizen for the commission of a crime there must be in force a statute from which the defendant, had he been interested and of average intelligence, could have ascertained he was about to commit a criminal act. Numerous decisions have applied that principle as one of the bulwarks upon which democracy survives. *See, e. g., Grody v. State* (1972), 257 Ind. 651, 278 N.E.2d 280; note, 23 *Ind.L.J.* 272.

An examination of the Indiana statute's acceptability pursuant to this fundamental requirement of due process need lead no further than the first element. A matter or performance is "obscene" if:

"(1) The average person, applying contemporary community standards, finds that the dominant theme of the matter or performance, taken as a whole, appeals to the prurient interest in sex." IC 35–30–10.1–1(c)

Were I to examine that definition to gauge my activity as a bookseller, there are questions I should like to ask: What community? Who or what establishes a standard for the community? Can material appeal to prurient interest of an *average* person, or is such appeal strictly subjective?[3] When is the interest in sex prurient? How does one determine that prurient interest in sex is the dominant theme or merely a subsidiary aspect?[4]

One answer is that the distributor or would-be distributor may avoid offending

---

1. To this could have been added six (6) months' imprisonment. IC 35–30–10.1–7 (Repealed). Present law would limit the fine to $5,000 but permits imprisonment for up to one (1) year. IC 35–50–3–2.

2. I do so despite the vagueness of the term "community" as employed in the statute. No attempt to define that term was made in Ford's trial. However, aside from due process and equal protection arguments I believe Art. 4, Sec. 22 of the Indiana constitution requires that the community consist of the entire state. I also believe that judicial interpretation would be proper to apply that definition and save the statute from vagueness on that particular ground. *Cf.* IC 35–30–10.1–8 referring to the statute's statewide application.

3. The state's sole witness on this aspect of the case, an experienced police officer, provides illuminating testimony:
   "Q. I think you said that the book aroused you sexually?
   A. Not me, no.
   Q. The book did not arouse you sexually?
   A. Well, not to me personally it didn't. No. From what I know as being aroused, no.
   Q. Isn't that what appealing to your prurient interests means from what we discussed before?
   A. Well, to me, I am under the impression that prurient interest is lustfully—and I think there is a difference between lustfully and the type of arousal that most of us are—
   Q. When you saw this book did you feel lustful?
   A. It gives you that feeling, yes.
   Q. Did it give you that feeling?
   A. I can't really say.
   Q. Well, that is what you are here for.
   A. Well, yes and no."

4. If the statutory standards are not vague, then it would appear that a newspaper or magazine could easily be liable as a principal under Indiana's general accessory statute if it carried an advertisement for a book dealer or movie theatre which distributed obscene material. IC 35–41–2–4 provides that "[a] person who knowingly or intentionally aids . . . another person to commit an offense commits that offense . . . ." The offense proscribed by IC 35–30–10.1–2 is distributing, offering to distribute or exhibiting obscene matter.

the statute by refusing all materials containing descriptions or depictions of sexual conduct of the varieties enumerated in the statute.[5] This, of course, represents an unconstitutional burden upon free speech with which the cases are concerned.

Secondly, one might avoid materials once a court of competent jurisdiction has properly declared them obscene. This was the recommendation of the Committee on Obscenity and Pornography. *See* Report of the Commission on Obscenity and Pornography (1970), p. 63. It also provided the substance for Mr. Justice Douglas' dissent in *Miller.* 413 U.S. at 38, 93 S.Ct. 2622. However, that is not required by our statute nor is it present in the case before us.[6]

I believe the practical consequence of the statute is to create a community of the twelve seated in the box and permit their standards to largely determine *ex post facto* whether material is obscene.

On the factual determinations involved, their results will be largely insulated by traditional standards of appellate review. *Compare, e. g., Cuffel v. State* (1966), 247 Ind. 357, 215 N.E.2d 36 holding *Tropic of Cancer* not obscene upon the basis of *Grove Press, Inc. v. Gerstein* (1964), 378 U.S. 577, 84 S.Ct. 1909, 12 L.Ed.2d 1035. *But see Jacobellis v. Ohio* (1964), 378 U.S. 184, 83 S.Ct. 28, 9 L.Ed.2d 52.

The truthful answer is that the average person with only the language of IC 35–30–10.1–1 *et seq.* to guide him cannot determine with any confidence beforehand what conduct on his part is prohibited and what is permitted in delivering material depicting or describing sexual acts. For this reason the statute is void for vagueness, and the conviction should be reversed.

---

**5.** Acts of sexual intercourse, sodomy, exhibition of uncovered genitals in the context of masturbation or other sexual activity or sadomasochistic abuse. IC 35–30–10.1–1(d), (e).

**6.** IC 35–30–10.1–6 which provides for a preliminary determination of obscenity does not eliminate the defect since it allows prosecution for distribution of the specific exhibit used in the probable cause determination.