**STATE of Indiana, Appellant–Plaintiff,**

v.

**John VIRTUE, Appellee–Defendant.**

**No. 12A02–9503–CR–156.**

Court of Appeals of Indiana.

Nov. 17, 1995.

Rehearing Denied April 26, 1996.

Pamela Carter, Attorney General, Geoff Davis, Deputy Attorney General, Indianapolis, for appellant.

Richard Kammen, James T. Flanigan, McClure, McClure & Kammen, Indianapolis, for appellee.

## OPINION

BAKER, Judge.

Today we decide whether the State has the right to regulate the distribution of videotapes containing obscene matter. Appellant State of Indiana appeals the trial court's order dismissing the indictment of appellee-defendant John Virtue, pursuant to IND. CODE § 35-49-3-1, for Distribution of Obscene Matter, a Class A misdemeanor. Specifically, the State argues that the trial court erred in: (1) granting Virtue's motion to dismiss the indictment where Virtue failed to present affidavits or other evidence supporting the facts alleged in his motion and the court failed to hold an evidentiary hearing to determine questions of fact and (2) determining that Virtue's distribution of a videotape which allegedly contained obscene matter was protected under the First and Fourteenth Amendments to the United States Constitution and Article I, § 9 of the Indiana Constitution.

### FACTS

Virtue is the owner of the Movie Time video store. On August 17, 1993, Virtue rented a videotape entitled "Double Penetration" to a customer. Thereafter, on September 30, 1993, a Clinton County Grand Jury returned an indictment charging Virtue with distribution of obscene matter pursuant to I.C. § 35-49-3-1 (Distribution Statute) which provides: "A person who knowingly or intentionally ... offers to distribute, distributes or exhibits to another person obscene matter; commits a Class A misdemeanor." In response, Virtue filed a motion to dismiss the indictment on January 24, 1994, in which he alleged: 1) the definition of obscenity in IND.CODE § 35-49-2-1 (Obscenity Statute) is unlawfully vague and violates the Federal and State Constitutions and 2) applying the Distribution Statute to the distribution of videotapes in particular, violates the Indiana Constitution. Record at 22. On November 28, 1994, after hearing the presentation of the parties' arguments, the trial court dismissed the indictment finding that because the videotape in question was rented to consenting adults for viewing in their private homes and because the medium of a videotape is not one that is easily or inadvertently seen by children or the general public, the State's prosecution of Virtue unreasonably infringed upon Virtue's right of free speech and expression, as guaranteed by Article I, § 9 of the Indiana Constitution and the First and Fourteenth Amendments to the United States Constitution. The State now appeals.

### DISCUSSION AND DECISION

#### I. Motion to Dismiss

■ The State first argues that the trial court erred in dismissing the indictment because Virtue did not submit any affidavits containing sworn allegations supporting the facts asserted in his motion to dismiss and because the trial court did not hold an evidentiary hearing to resolve questions of fact.

■ When a defendant files a motion to dismiss an indictment, all allegations contained in the indictment are to be taken as true. *State v. Gillespie* (1981), Ind.App., 428 N.E.2d 1338, 1339. The defendant bears the burden of proving every fact essential to support his motion by a preponderance of the evidence. IND.CODE § 35-34-1-8(f). If a motion to dismiss is based upon the existence or occurrence of facts, the motion shall be accompanied by affidavits containing sworn allegations of those facts; however, if the motion is based upon the existence of a question of law, the motion shall be accompanied by a memorandum stating the legal question in issue. I.C. § 35-34-1-8(a). Once all documents are filed, the trial court must decide whether an evidentiary hearing is necessary to resolve any questions of fact. I.C. § 35-34-1-8(c).

In the instant case, in accordance with I.C. § 35-34-1-8(a), Virtue filed a motion to dismiss accompanied by a supporting memorandum in which he set forth two questions of law and various facts supporting a dismissal. The State did not file a responsive brief opposing Virtue's motion or the facts contained therein; rather, at the hearing, the State presented arguments regarding only the questions of law. Because Virtue's motion to dismiss was not based solely on questions of law but was also based on the exis-

tence of the facts alleged in his motion, we agree that Virtue should have filed sworn affidavits to support those facts and that the trial court erred in failing to hold an evidentiary hearing to determine the facts. However, because the State does not challenge any of the facts asserted in Virtue's motion or the facts contained in the trial court's order, we find that the error was harmless. Thus, we shall address the remainder of the State's arguments.

## II. Constitutional Issues

### A. United States Constitution

Next, the State argues that the trial court erroneously determined that the State's prosecution of Virtue, pursuant to the Distribution Statute, for distributing an allegedly obscene videotape violated Virtue's rights as guaranteed by the First Amendment to the United States Constitution, as it is applied to the states through the Fourteenth Amendment.[1] Specifically, the State contends that the trial court should not have applied either the United States Supreme Court's decision in *Stanley v. Georgia* (1969), 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542, or the consenting adult standard to the facts of the present case.

In *Stanley*, the Court held that persons have a constitutional right, under the First Amendment, to possess obscene materials in the privacy of their own homes. In arriving at its decision, the United States Supreme Court discussed the boundaries of the First Amendment, which provides that "Congress shall make no law . . . abridging the freedom of speech, or of the press; . . .," and found that the freedoms of speech and press necessarily include the right to receive information and ideas regardless of their social worth. Thus, the Court held that the First Amendment restricts a state's right to regulate the private possession of obscene matter. *Id.* at 564, 568, 89 S.Ct. at 1247, 1249–50. In support of this holding, the Court noted that there was little danger that the privately-held obscene materials might fall into the hands of children or intrude upon the sensi-

bilities or privacy of the general public. *Id.* at 567, 89 S.Ct. at 1249.

In the instant case, the trial court applied the Supreme Court's reasoning in *Stanley* and found that because Virtue's videotapes are distributed solely to consenting adults who have knowledge of the adult content of the tapes, and because there is only a minimal danger that the tapes could be inadvertently viewed by a minor or the general public, the right to distribute such tapes may not be regulated by the State. We must disagree with the trial court's determination.

The *Stanley* Court held that a person has a right to privately possess obscene matter. It did not address whether an individual has a right to distribute obscene materials. In fact, since *Stanley*, several decisions of the United States Supreme Court have held that *Stanley* is limited to the private possession of obscene materials and its holding does not imply a correlative right to distribute obscene materials for private use. *United States v. Reidel* (1971), 402 U.S. 351, 356, 91 S.Ct. 1410, 1412–13, 28 L.Ed.2d 813; *United States v. Orito* (1973), 413 U.S. 139, 141, 93 S.Ct. 2674, 2676–77, 37 L.Ed.2d 513. Thus, the trial court's reliance on *Stanley*, as a basis for its determination that the State has a restricted right to regulate the distribution of obscene materials, is misplaced.

Furthermore, we are compelled to accept the State's contention that the trial court also erred in utilizing the consenting adult standard in its determination of whether the State can regulate the distribution of obscene materials. The United States Supreme Court has rejected the consenting adult standard and stated that regardless of whether an adult consents to viewing obscene materials,

[t]he States have the power to make a morally neutral judgment that public exhibition of obscene material, or commerce in such material, has a tendency to injure the community as a whole, to endanger the public safety, or to jeopardize . . . the States' right to maintain a decent society.

---

1. For purposes of this appeal, both the State and Virtue have conceded that the videotape, when placed in a videocassette recorder, displays ma-

terial that is obscene pursuant to IND.CODE § 35–49–2–1.

*Paris Adult Theatre I. v. Slaton* (1973), 413 U.S. 49, 69, 93 S.Ct. 2628, 2641–42, 37 L.Ed.2d 446 (citations omitted). Thus, the states have the right to regulate the distribution of obscene matter regardless of whether that matter is distributed to consenting adults. Accordingly, we find that the trial court erred in determining that the State's prosecution of Virtue for distribution of obscene materials violated his rights under the First Amendment.

## B.  Indiana Constitution

Having determined that Virtue was not entitled to protection under the First Amendment of the United States Constitution, we now consider his rights under the Indiana Constitution. The State argues that its prosecution of Virtue for distribution of an allegedly obscene videotape does not violate Article I, § 9 of the Indiana Constitution.

In his motion to dismiss, Virtue conceded that this court has previously determined that the distribution of obscene material is not protected by the Indiana Constitution and that the Distribution Statute is constitutional on its face. *Fordyce v. State* (1991), Ind.App., 569 N.E.2d 357, 360. Instead, Virtue alleges that the Distribution Statute is unconstitutional and violates his rights under Article I, § 9 of the Indiana Constitution when it is applied to the distribution of videotapes.

■ In reviewing a statute based upon a constitutional challenge, we are required to presume the statute is constitutional, *Van Sant v. State* (1988), Ind.App., 523 N.E.2d 229, 233, and must interpret the statute so as to preserve its constitutionality. *U.S. Steel Corp. v. Northern Indiana Pub. Serv. Co., Inc.* (1985), Ind.App., 486 N.E.2d 1082, 1085, *trans. denied.* Additionally, we are required to follow prior decisions of this court and our Supreme Court in making our determination.

■ Article I, § 9 of the Indiana Constitution provides:

No law shall be passed restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever; but for the abuse of that right, every person shall be responsible.

Pursuant to this clause, the legislature may not impair the flow of ideas; instead, its sole authority over expression is to sanction individuals who commit abuse. *Price v. State* (1993), Ind., 622 N.E.2d 954, 958. Abuse is found in expression which injures the retained rights of individuals or undermines the State's efforts to facilitate their enjoyment. *Id.* at 959. Once the legislature determines that an expression constitutes an abuse, the State is permitted to use its police power to promote the health, safety, comfort, morals, and welfare of the public. *Id.* The State, however, is not permitted to punish expression when doing so would place a material burden upon a core constitutional value. *Id.* at 960.

Virtue does not contend that the distribution of an obscene videotape is a core constitutional value. Thus, in order for the State's regulation of the distribution of videotapes to be constitutional, the State only has to show that the distributor abused his right to freedom of expression in distributing the videotapes.

■ In its order, the trial court determined that Virtue did not abuse his rights under Article I, § 9 when he distributed the allegedly obscene videotapes. The court based its ruling on the nature of the medium of videotapes and the manner in which the videotapes were distributed, namely to consenting adults in a separate, restricted area of the store. However, the court's reliance upon a consenting adult standard to determine whether the distribution amounted to an abuse is inconsistent with previous decisions of this court and the focus of the Obscenity Statute.

Indiana decisions have long recognized the State's interest in protecting its citizens from obscenity. In *Fordyce,* 569 N.E.2d 357, our Supreme Court found Indiana's obscenity statutes to be constitutional based upon an historical analysis which revealed a long legislative history of regulating obscenity in this State. Specifically, the court concluded that "our forefathers were concerned with the degrading effects of obscenity on society," which presumably includes all members of

society, and not just those members who do not wish to view obscenity. *Id.* at 362; *see also Ford v. State* (1979), 182 Ind.App. 224, 394 N.E.2d 250. Thus, our Supreme Court in *Fordyce*, as well as other Indiana Courts, have expressly refused to adopt a consenting adult standard to determine whether material is obscene. *See Van Sant*, 523 N.E.2d at 236. Instead, we have held that commercial exposure and sale of obscene materials to anyone, including consenting adults, is subject to state regulation. *Ford*, 182 Ind.App. at 230, 394 N.E.2d at 254.

Further, the Obscenity Statute [2] defines obscenity according to "contemporary community standards," not the standards of those persons who wish to view the materials. This statute, as well as the Distribution Statute, does not reference the persons to whom the obscene material is distributed; rather, its focus is on the content of the material regardless of who receives it. Thus, in light of our legislative history and past decisions of this court, we are compelled to find that the trial court's determination that Virtue did not abuse his rights in distributing the videotapes because he only distributed them to consenting adults was improper.

Additionally, we find that the trial court erred in its conclusion that the nature of the medium of videotapes and the manner in which they are distributed prevent the distribution of videotapes from being an abuse of the distributor's right to freedom of expression. Virtue's argument, which was more fully developed at oral argument,[3] is that the Obscenity and Distribution Statutes are inapplicable to the present situation because videotapes are not obscene unless and until they are viewed through the use of a videocassette recorder (VCR). Virtue's argument is based primarily on the nondescript packaging of videotapes, which is comprised of a black

plastic box that, without a label or cover, gives no indication of its content. Thus, Virtue posits that without a VCR, an obscene videotape is no more dangerous than a G-rated videotape. Furthermore, Virtue argues that the precautions taken in the distribution of the videotapes ensures that minors and the unwilling public will not view the videotapes, and therefore, that the videotapes will only be viewed by the renter in the privacy of his own home, an area protected by *Stanley*. In essence, Virtue appears to be arguing that because a videotape containing obscene matter cannot be viewed until it is played in a VCR, it is not obscene until that point in time. Thus, the videotape is not obscene at the time it is distributed. Such an argument, although creative, is misdirected.

In the past, this court has found the distribution of obscene written and photographic materials to be a violation of the Obscenity Statute based on the material's content, regardless of whether that content is apparent from the packaging. *Fordyce*, 569 N.E.2d at 358, 363. For example, a book with no photographs, consisting only of fictional text and advertisements, can still be considered obscene. *Id.* at 358. Thus, the mere fact that some effort is required to access the materials does not change the point of distribution or the character of the material, and does not place the material's distribution outside of the Obscenity Statute.[4] Moreover, adult videos, much like magazines and films, are generally not encased in a plain, nondescript cover; rather, they are usually encased in covers depicting their titles and content, and often portraying still photographs taken from the videos.

Further, we do not find that videotapes, when compared to other media, pose less of a danger that obscene material will be inadver-

---

**2.** I.C. § 35–49–2–1 provides that a matter or performance is obscene if:

(1) the average person, applying contemporary community standards, finds that the dominant theme of the matter or performance, taken as a whole, appeals to the prurient interest in sex; (2) the matter or performance depicts or describes, in a patently offensive way, sexual conduct; and

(3) the matter or performance, taken as a whole, lacks serious literary, artistic, political, or scientific value.

**3.** Oral argument was held on October 26, 1995.

**4.** We would also remind Virtue that his argument for an exception to the Obscenity Statute based upon advancing technology is more appropriately addressed to the legislature than to this court.

tently viewed. Although it is true that the magnetic tape inside videotapes cannot be viewed without a VCR, once inserted into such a machine, the objectionable material is readily available for viewing. Therefore, despite the extra step involved in viewing a videocassette that is not present when reading a book (that of inserting the videotape into the VCR), innocent viewers are not protected from viewing obscene materials. In this video age, most homes have a VCR, and many children learn to operate the VCR before they learn to read. Thus, the danger still exists that a child will inadvertently view obscene matter. In fact, there is a greater danger to children with videotapes than with written obscenity because, unlike videotapes, written materials require the child to be able to read.

Virtue has also failed to distinguish videotapes from other written materials with regard to inadvertent viewing by the general public. Magazines, books and videotapes all have covers depicting their titles and giving some indication as to their content. In addition, with all three, the viewer must open or access the matter in order to view its contents. Thus, despite Virtue's arguments to the contrary, we find obscene videotapes to be no less dangerous or less of an abuse of the freedom of expression than other forms of obscene material, and Virtue is subject to prosecution for distribution of allegedly obscene videotapes.[5] Accordingly, the trial court erred in its determination that the State's prosecution of Virtue for distributing obscene materials violated his right to freedom of expression under Article I, § 9 of the Indiana Constitution.

Judgment reversed and remanded for proceedings not inconsistent with this opinion.

NAJAM and DARDEN, JJ., concur.

---

5. Our holding today, although directed at obscene videotapes, is equally applicable to other technology used to distribute material, such as laser discs, CD ROM, and floppy disks.